[Civil No. 580.   Filed April 16, 1898.]

[52 Pac. 1120.]

JOSEPH I. ROBERTS, Plaintiff and Plaintiff in Error, v. C. W. SMITH, as Receiver of the Atlantic and Pacific Railroad Company, Defendant and Defendant in Error.

1. APPEAL AND ERROR—TRANSCRIPT—MATERIAL EVIDENCE—TREATED AS ALL OF THE EVIDENCE—REVIEW OF INSTRUCTIONS—PRESUMPTION.— Where the transcript contains what purports to be all the material evidence in the case, this court will treat it as all of the evidence, as otherwise plaintiff in error could not be heard to complain about the instructions of the court to the jury, the presumption, where all the evidence is not before the court for review, being in favor of the regularity of the court in giving the instruction complained of.

2. RAILROADS — CARRIERS OF PASSENGERS — EJECTING PASSENGERS — FREIGHT - TRAINS — EVIDENCE — INSTRUCTIONS FOR DEFENDANT. — Where the evidence shows that plaintiff was at a small way-station on defendant's road; that at that time there was no station-agent there; that a train came along going west to Williams, to which point plaintiff wished to go, which was made up of freight-cars, two empty passenger-cars, and a car of the superintendent of the road; that the train, as the result of a signal, slowed up, and plaintiff boarded one of the passenger-cars while it was still in motion; that he tendered to the conductor his fare; that the conductor was making change when the superintendent told the conductor that plaintiff would have to get off; that the train was thereupon stopped within one and a half miles of the station and plaintiff was asked to get off, and his money was returned; that it was daytime, and plaintiff got off the train without force or violence and walked to and reached the station without any physical injury; that the train was a special freight-train and was not authorized to carry passengers; and that it was against the rules of the company to carry passengers on that train, an instruction to the jury to return a verdict for the defendant upon the motion of defendant is proper.

3. SAME—SAME—RIGHT TO DESIGNATE ON WHAT TRAINS PASSENGERS MAY RIDE.—Railroad companies have the right to designate on

what trains passengers may ride, and it is not the right of persons seeking passage over railroads to elect for themselves what trains they may ride on.

4. TRIAL—DEMURRER TO THE EVIDENCE—NATURE OF—IMPROPER PRAC-TICE — INVOLUNTARY NONSUIT — GRANTING IMPROPER — BRYAN V. PINNEY, 3 ARIZ. 34, CITED—INSTRUCTION TO THE JURY TO RETURN VERDICT FOR DEFENDANT—PROPER PRACTICE.—A demurrer to the evidence takes from the jury all consideration of the case, and the judgment is rendered by the court alone, and it operates in the same way as a motion for a nonsuit. It has been decided by this court in *Bryan* v. *Pinney*, *supra*, that an involuntary nonsuit cannot be allowed under the statutes of Arizona. The proper practice under the Arizona statute is by an instruction to the jury.

5. SAME—JURY—INSTRUCTION TO RETURN VERDICT FOR DEFENDANT—WHEN GRANTED.—The court may instruct the jury to return a verdict for the defendant when it appears that upon the case made by plaintiff's evidence, all taken as true, the defendant is not liable; that, taking the evidence in its strongest light against the defendant, the plaintiff has presented no case upon which he is entitled to recover.

WRIT OF ERROR from a judgment of the District Court of the Fourth Judicial District in and for the County of Coconino. Owen T. Rouse, Judge. Affirmed.

The facts are stated in the opinion.

Morrison & Morrison, and E. M. Sanford, for Plaintiff in Error.

The existence of the relation of passenger and carrier is only to be implied from such circumstances as will warrant an implication that the one has offered himself to be carried and the other has accepted the offer. *Webster* v. *Fitchburg R. R. Co.*, 58 Am. & Eng. R. R. Cases, 1; *Webster* v. *Fitchburg*, 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *Dodge* v. *Boston etc. S. S. Co.*, 148 Mass. 207, 19 N. E. 373, 2 L. R. A. 83.

Where one, although he has paid no fare, is on a car with the knowledge and permission of the person in charge thereof, he is a passenger, and is entitled to the same care and protection as if he had paid fare. *Merchlhausen* v. *St. Louis R. R. Co.*, 28 Am. & Eng. R. R. Cases, 157; *State* v. *Hurlstone*, 92 Mo. 332, 5 S. W. 38; *Sherman* v. *Hannibal*, 72 Mo. 65, 37 Am. Rep. 423.

Every one riding in a railroad car is presumed to be there

lawfully as a passenger, having paid, or being liable to pay when called upon to pay his fare. *Gillingham* v. *Ohio River R. R. Co.*, 51 Am. & Eng. R. R. Cases, 222; *Gillingham* v. *Ohio River R. R. Co.*, 35 W. Va. 588, 29 Am. St. Rep. 827, 14 S. E. 243, 14 L. R. A. 798; *Young* v. *Commissioners of Mahoning County*, 53 Fed. 897.

A passenger having a ticket for a passage upon a railroad who boards a freight-train which does not carry passengers, believing the ticket good on that train, is to be treated as a passenger, and not as a trespasser. *Boggess* v. *Chesapeake etc. R. R. Co.*, 37 W. Va. 297, 16 S. E. 525, 23 L. R. A. 777.

When it is customary for persons to enter cars without a ticket and to pay on the train, if a passenger enters and takes a seat, and the conductor makes an assault on him, the company is liable. *Illinois Central R. R. Co.* v. *Sheehan*, 29 Ill. App. 90.

If a carrier knowing there is good ground for refusing to carry a passenger, nevertheless receives him, he cannot afterward eject him for the same cause. *Person* v. *Duane*, 4 Wall. 605; *Tarbell* v. *Railroad Co.*, 35 Cal. 616.

Extra train not carrying passengers. Even though forbidden by the rules, if the person acted in good faith, he will be entitled to all the rights of a passenger. *Everett* v. *Oregon etc. R. R. Co.*, 9 Utah, 340, 34 Pac. 289.

A passenger is not supposed to know of a rule. He may know that passengers are carried and not know under what circumstances or conditions, and until so informed is not a trespasser. *Pilcher* v. *Railroad Co.*, 38 Kan. 516, 5 Am. St. Rep. 770, 16 Pac. 945; *Lucas* v. *Railroad Co.*, 33 Wis. 64; *Durer* v. *Railroad Co.*, 58 Me. 188; *Arnold* v. *Railroad Co.*, 115 Pa. St. 135, 2 Am. St. Rep. 542, 8 Atl. 213; see, also, note in 8 Atl. 216.

Stopping a train at a station is an invitation to the public to take passage. *Railroad Co.* v. *Werle*, 21 Am. & Eng. R. R. Cases, 429; *Werle* v. *Long Island R. R. Co.*, 98 N. Y. 650.

Conceding that defendant had a right to eject him from the train, it had no right to do it elsewhere than at a station. *Maples* v. *Railroad Co.*, 33 Conn. 561; *Hardenberg* v. *Railroad Co.*, 39 Minn. 3, 12 Am. St. Rep. 610, 38 N. W. 625.

When the passenger entered the train in good faith the company could not eject him elsewhere than at the station.

*Galena* v. *Hot Springs R. R. Co.*, 13 Fed. 119; *Pearson* v. *Duene*, 4 Wall. 695.

If a passenger takes a wrong train, he is a passenger on that train. *Railroad Co.* v. *Powell*, 4 Ind. 37.

If a passenger takes a wrong train through the fault of the servants of the railroad company, the relation of passenger and carrier exists between him and the company. *Railroad Co.* v. *Gilbert*, 64 Tex. 539; *Railroad Co.* v. *Smith*, 1 S. W. 565.

Where a person is invited to enter a car the relation of carrier and passenger is created. *Railroad Co.* v. *Martin*, 11 Ill. App. 386.

If a passenger is permitted to take a train at a place which is not a station, he is not a trespasser. *Dewire* v. *Boston etc. R. R. Co.*, 148 Mass. 343, 19 N. E. 523, 2 L. R. A. 166.

It was the duty of the conductor to notify the plaintiff before the train started. *Burke* v. *Railroad Co.*, 51 Mo. App. 491; *Hobbs* v. *Railroad Co.*, 49 Ark. 357, 5 S. W. 586.

The whole power and authority of a corporation *pro hac vice* is vested in conductors (as to their relation to passengers). *Randolph* v. *Railroad Co.*, 18 Mo. App. 609; *Bass* v. *Railroad Co.*, 36 Wis. 450, 17 Am. Rep. 495.

Where there is no ticket-agent, and he "applies for passage or enters their passenger-trains without having such ticket, but offers to pay the usual fare, the company cannot lawfully eject or reject him." *People* v. *Railroad Co.*, 16 Or. 26, 8 Am. Rep. 289, 19 Pac. 107; *Phettipone* v. *Railroad Co.*, 84 Wis. 412, 54 N. W. 1092.

If the conveyance is one which by contract the passenger has no right to take, the company's duty is to inform him and put him off at a proper place. *Railroad Co.* v. *Rosensweig*, 26 Am. & Eng. R. R. Cases, 498; *Railroad Co.* v. *Schwindling*, 101 Pa. St. 258, 47 Am. Rep. 706.

The illegal ejection of a passenger entitled by contract to be carried over a railway is itself an act for which damages are recoverable. The measure is for the jury. *Railroad Co.* v. *Homer*, 27 Am. & Eng. R. R. Cases, 186.

Plaintiff is entitled to recover damages, and also smart money, because the general superintendent participated in the wanton and oppressive acts. *Railroad Co.* v. *Prentice*, 15 Sup. Ct. 265; *Denver etc. R. R. Co.* v. *Harris*, 122 U. S. 597, 30 L. Ed. 1146, 7 Sup. Ct. 1286.

C. N. Sterry, for Defendant in Error.

The plaintiff affirmatively proved by his own evidence that the train which he got upon was not a train which under the rules and regulations of the railroad company carried passengers. Therefore, the plaintiff had no right to go upon such train for the purpose of being carried, and the railroad company had a perfect right to put him off the train after he had gotten upon it.

It is a rule that a person about to become a passenger to be transported by a railroad company upon its line of road must at his own peril ascertain the rules and regulations of the company concerning the trains on which he may ride from the point he desires to take passage to the station at which he wishes to leave the train. *Chicago etc. R. R. Co.* v. *Randolph,* 53 Ill. 510; *Illinois Cent. R. R. Co.* v. *Nelson,* 59 Ill. 110; *Hobbs* v. *Railroad Co.,* 49 Ark. 357, 5 S. W. 586, 34 Am. & Eng. R. R. Cases, 268; *Duling* v. *Railroad Co.,* 66 Md. 120, 6 Atl. 593; *Railroad Co.* v. *Bartram,* 11 Ohio St. 463; *Chicago etc. R. R. Co.* v. *Bills,* 104 Ind. 13, 3 N. E. 611; *Lake Erie etc. R. R. Co.* v. *Lucas,* 18 Ind. App. 239, 47 N. E. 842; *McRae* v. *Railroad Co.,* 88 N. C. 526, 43 Am. Rep. 745; *Railroad Co.* v. *Cameron,* 66 Fed. 709; *Texas etc. R. R. Co.* v. *Ludlam,* 57 Fed. 481, 6 U. S. C. C. App. 455; *Plott* v. *Railroad Co.,* 63 Wis. 511, 23 N. W. 415; *Deitrich* v. *Railroad Co.,* 71 Pa. St. 432; *Atchison-Topeka Railroad Co.* v. *Gants,* 38 Kan. 608, 17 Pac. 54.

At common law, and in the absence of statute, one wrongfully on a train may be expelled at any point not dangerous, and the conductor is not required to wait until a station is reached. *Louisville etc. R. R. Co.* v. *Johnson,* 92 Ala. 204, 25 Am. St. Rep. 35, 9 South. 269; *Everett* v. *Railroad Co.,* 69 Iowa, 15, 58 Am. Rep. 207, 28 N. W. 410; *Brown* v. *Railroad Co.,* 51 Iowa, 235, 1 N. W. 487; *Railroad Co.* v. *Hinsdale,* 38 Kan. 507, 16 Pac. 937; *McClure* v. *Railroad Co.,* 34 Md. 532, 6 Am. Rep. 345; *Railroad Co.* v. *Miller,* 19 Mich. 305; *Wyman* v. *Railroad Co.,* 34 Minn. 210, 25 N. W. 349; *Railroad Co.* v. *Skillman,* 39 Ohio St. 444; *Moore* v. *Railroad Co.,* 38 S. C. 1, 16 S. E. 781.

STREET, C. J.—Plaintiff in error instituted an action in the district court of Coconino County against the defendant

in error to recover damages for ejecting him from a train on the fourteenth day of July, 1894, which train was operated by the general superintendent and the employees of the Atlantic and Pacific Railroad, alleging that he boarded the train at the town of Challender, on the line of said railroad in Coconino County, as a passenger, with the intention of riding to the town of Williams on said line of railroad. The case was tried before a jury, and after the plaintiff had introduced all his evidence the court, on motion of the defendant, instructed the jury to bring in a verdict for the defendant, which was accordingly done, and judgment was rendered thereon in favor of the defendant; that plaintiff take nothing by his complaint; that defendant go hence without day, and recover from plaintiff his costs. From which judgment and ruling of the court on the trial of this cause plaintiff takes his writ of error.

The transcript contains what purports to be all the material evidence in the case, and we shall treat it as all of the evidence; otherwise, plaintiff in error could not be heard to complain about the instructions of the court to the jury. If all the evidence be not before the court for review, the presumption would be in favor of the regularity of the court in giving the instructions to the jury to bring in a verdict for the defendant. The evidence shows, however, that on the fourteenth day of July, 1894, plaintiff was at Challender, in Coconino County, Arizona, for the purpose of buying stock to be used in his butcher business; that he lived at Prescott, Arizona, and was desirous of going from Challender to Williams, Arizona, a station just west of Challender; that Challender is a small way-station on the line of the road; that the plaintiff was there on or about the 14th of July, and at that time there was no station-agent at Challender; that on the afternoon of that day a train came along going west through Challender to Williams, which was made up of freight-cars, two empty passenger-cars, and the car of the superintendent of the road; that the train, as the result of a signal, slowed up in approaching the station, but did not stop, and as the train slowed up the plaintiff boarded one of the passenger-cars while it was in motion; that he there saw a man on the platform of the car that he boarded whom he took to be a conductor; that the man was not in uniform, but he handed

the man after he had got onto the platform of the car a five-dollar bill; that the man to whom he handed the money was feeling round in his pocket for change when the superintendent of the road called to the man, and told him that plaintiff would have to get off. Thereupon the train was stopped, and plaintiff was asked to get off the train, which he did without force or violence, and without being in any way physically injured. His money was given back to him. This was about a mile or a mile and a half west of Challender, and the plaintiff walked back to Challender. This all happened in the daytime, and plaintiff reached Challender without any physical injury.

Plaintiff further showed from the testimony of the superintendent, who was on the train at that time, that the train was made up of several cars of coal, two deadhead coaches, and the officers' car, in which he was riding; that the train was a special freight-train, and no person had authority to permit passengers to be carried on that train on that day without the permission of himself or the superintendent of transportation; that the train was not authorized by any one to carry passengers; that the train was slowed up in acknowledgment of signals to stop as the train approached Challender; that he saw the plaintiff get on the train, and immediately sent word to the conductor that this was not a passenger-train, that he could not carry passengers, and that the plaintiff be put off; that if any passengers were on the train they were there without his knowledge or permission; that it was against the rules of the company to carry passengers on that train; and that he would not have allowed the train to stop at Challender either to take on or let off passengers on that day. When plaintiff had introduced the foregoing evidence he closed his case, whereupon the defendant moved the court to instruct the jury for a verdict for the defendant, which was given as before stated.

We have examined many authorities cited in the brief of plaintiff in error, and find them to bear more particularly upon the question of relation between the passenger and carrier after ticket purchased or contract made. We have also examined many cases cited by defendant in error as to the right of a railroad company to designate upon what trains passengers may ride, and as to the right of a railroad com-

pany to prohibit passengers from getting on and riding on certain trains. We regard the rule as well established that railroad companies have a right to designate on what trains passengers may ride, and that it is not the right of persons seeking passage over railroads to elect for themselves what trains they may ride on. The authorities cited in the brief of defendant in error are full and complete upon that question, and, without quoting from them at length, we will quote from the case of *Railroad Co.* v. *Randolph,* reported in 53 Ill. 510, 5 Am. Rep. 60, which is as follows, to wit: "No one will question the legal right of a railroad company to appropriate a portion of their trains exclusively to the carrying of freight, and to entirely exclude passengers from such trains. Their obligations to the public only require them to furnish sufficient passenger-trains to accommodate the travel and such freight-trains as the business of the country along their lines requires. . . . They are not required to carry passengers on their freight-trains, or freight on their passenger-trains, but they may, if they choose, do either." And also from the case of *Railroad Co.* v. *Nelson,* reported in 59 Ill. 110: "Railroads are created for the transportation of both persons and property, and, from the time when first introduced into use, such have provided different modes of carrying each. They have furnished coaches constructed exclusively for the conveyance of passengers, and cars for the conveyance of freight. Their construction is entirely different, and there is a great difference in the two kinds of trains, and each is only adapted to the purpose of its construction. . . . The law has not required such corporations to carry passengers on their freight-trains, nor freight in their passenger-coaches. It only requires them to carry both, leaving it to them to regulate the manner in which it shall be done, and custom has sanctioned the mode adopted. It has never, so far as we are aware, been held that railroads are required to provide the means for carrying passengers on their freight-trains. That is left to their discretion, and it is a matter of choice with them whether or not they shall, for the accommodation of the public, adopt such mode of transporting passengers; and being a matter of choice, and not a duty, they may, in adopting such a mode, impose all reasonable rules consistent with the safety of passengers and the management of their business." Similar expressions

may be found in numerous reports, which makes the law of the case well settled. In this particular instance the defendant had not bought a ticket. No agent of the railroad company had sold him any ticket by which he was authorized to board any train, nor had any agent of the company represented to him that the train which he boarded was one upon which he might ride. His own evidence showed that the train was stopped out of its regular order by a signal which must have been given by some one not connected with the railroad company, for no agent or any one connected with the company was shown to be upon the ground to give the signal; that he took advantage of the signal that was given, and boarded the train while it was in motion, and that after he boarded the train he attempted to pay for his passage, the pay was declined, and the train was stopped, and plaintiff was ejected within a very few minutes after he had boarded the train. Under these circumstances, what contract between himself and the company had been violated? If none, he could recover no damages for the violation of a contract. His own evidence showed that he was ejected from the train in the most orderly way, and received no physical injuries therefrom. No doubt plaintiff was misled as to its being a train calculated to carry passengers from the fact that there were two deadhead passenger-coaches going through, and also an officers' car, which he says he did not recognize as such until after he was ejected. Plaintiff made a mistake without the fault of the company, and his mistake was corrected without the loss of property or physical injury to plaintiff. It clearly was the right, under such showing, for the court to instruct the jury as it did.

The defendant in error first demurred to the evidence, which demurrer was allowed by the court, but no judgment was rendered thereon. Afterwards defendant asked the court to instruct the jury to bring a verdict for it, which was given, and verdict so rendered. It has been decided by this court in the case of *Bryan* v. *Pinney*, reported in 3 Ariz. 34, 21 Pac. 332, that an involuntary nonsuit cannot be allowed under the statutes of Arizona. The same rule prevails in the federal circuit and district courts, and a demurrer to the evidence would operate in the same way as a motion for a nonsuit. It takes from the jury all consideration of the case, and the judg-

ment is rendered by the court alone. The old English *nisi prius* practice was, that "the plaintiff is in no case compellable to be nonsuited, and if he insists upon the matter being left to the jury, they must give in their verdict." 2 Tidd's Practice, 869. The proper practice under the Arizona statute is by an instruction to the jury. When it appears to the trial court that upon a case made by plaintiff's evidence, all taken as true, the defendant is not liable; that, taking the evidence in its strongest light against the defendant, the plaintiff has presented no case upon which he is entitled to recover,—the court may instruct the jury to return a verdict for the defendant. We think this case falls clearly within the rule, and the court committed no error in giving such instruction. The judgment of the district court is affirmed.

Sloan, J., Doan, J., and Davis, J., concur.