[Civil No. 1852. Filed February 17, 1921.]

[195 Pac. 538.]

# ARIZONA BINGHAMPTON COPPER COMPANY, a Corporation, Appellant, v. GEORGE M. DICKSON, as Administrator of the Estate of HARRY A. DICKSON, Deceased, Appellee.

1. TRIAL—MOTION FOR DIRECTED VERDICT ADMITS TRUTH OF EVIDENCE OF OPPOSING PARTY.—A motion for directed verdict admits the truth of whatever competent evidence the opposing party had introduced and challenges its sufficiency to support a verdict, and the evidence must be viewed in the strongest light against movant.

2. TRIAL—WHEN DIRECTED VERDICT PROPER STATED.—It is only when the evidence is insufficient to support a verdict or where it is so weak that on a motion for new trial after verdict the court would feel constrained to set it aside that the court is justified in directing a verdict.

3. MINES AND MINERALS—LIABILITY FOR DEATH OF CONTRACTOR FALLING FROM LADDER HELD FOR JURY.—In action for death of miner contracting to construct an upraise in a mine, tools, materials and appliances to be furnished by mine owner, death being caused by breaking of ladder furnished to enable decedent to go to and from his work, evidence *held* to take case to jury as against motion to direct verdict.

4. MASTER AND SERVANT—CONTRACTOR CANNOT RECOVER FOR INJURIES IN PERFORMANCE OF WORK.—It is a general rule that a contractor cannot recover from his employer for injuries he may sustain in the performance of his contract.

5. MASTER AND SERVANT—DUTY TO CONTRACTOR WHERE RIGHT TO DIRECT WORK IS RESERVED STATED.—Where the employer reserves the right to direct the manner of the performance of the contract in in any particular or where he undertakes to provide any of the instrumentalities, he owes to the contractor and the latter's employees the duty of exercising reasonable care in respect to such matters.

6. MINES AND MINERALS—DUTY TO FURNISH SAFE LADDER TO CONTRACTOR HELD NONDELEGABLE.—Where mine owner hires contractor to complete construction of an upraise in a mine and furnishes him with a ladder to go to and from work, the duty to furnish a safe ladder is a nondelegable personal duty.

7. MINES AND MINERALS—OWNER LIABLE FOR DEATH FROM DEFECTIVE LADDER FURNISHED CONTRACTOR.—A mine owner hiring a con-

tractor to complete an upraise in a mine and furnishing him with a ladder whereby he might go to and from work cannot escape liability for death of contractor from defect in ladder on theory that defect was due to manner of constructing and repairing by contractor under previous contract to build part of upraise.

8. EVIDENCE—FACTS HELD NOT TO PRESENT CASE OF RESTING ONE PRESUMPTION ON ANOTHER.—Where contractor hired to complete construction of an upraise in a mine was furnished a ladder to go to and from work, and contractor was killed by a fall from the ladder while ascending, the ladder on subsequent inspection showing broken rungs and rotten upright, and ladder was all right on the descent, and no rocks had fallen nor anything else occurred to break the rungs from that time until deceased attempted to ascend the ladder, the facts did not present a case of resting one presumption on another to establish proximate cause of death.

9. NEGLIGENCE—MAY BE SHOWN BY CIRCUMSTANCES.—The law is not so exacting as to require every fact and circumstance going to make up a case of negligence or to identify the proximate cause to be proved by eye-witnesses or positive or direct testimony.

10. APPEAL AND ERROR—PRESUMED THAT VERDICT WAS BASED ON EVIDENTIARY FACTS SHOWN.—Where, in action for death of a contractor hired to construct an upraise in a mine from fall from a ladder furnished by mine owner, there was substantial evidence from which it might be inferred deceased fell because of alleged defect in the ladder, it should be assumed in support of verdict for plaintiff administrator that it was based on the evidentiary facts justifying that inference.

11. APPEAL AND ERROR—OBJECTION TO DEPOSITION SHOULD HAVE BEEN RENEWED IN TRIAL COURT.—Where objection was made on offer of deposition that no showing was made that witness was without the jurisdiction as required by Civil Code, paragraph 1713, and thereupon attorney for party testified that he was advised by witness that he was leaving the state, and as far as attorney knew he was still out of the state, the objection to be reviewable, should have been renewed on reading the deposition.

12. DEATH—MEASURE OF DAMAGES TO ESTATE STATED.—Under Civil Code, paragraphs 3372–3374, providing that in action for death by personal representative for benefit of estate the jury shall give such damages as they may deem fair and just, the measure of damages represent the probable accumulations of the deceased had he lived his allotted time according to mortality tables.

13. APPEAL AND ERROR—AMOUNT OF VERDICT FOR DEATH NOT OVERTURNED FOR PASSION AND PREJUDICE.—In action by personal representative for death of a miner, the amount recovered to become assets of the estate under Civil Code, paragraphs 3372–3374, a verdict for $15,000 will not be overturned on appeal as given un-

der influence of passion or prejudice where deceased was twenty-six years of age, earning $6 to $6.40 per day, and with a life expectancy of 37.43 years.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

### STATEMENT OF FACTS.

Appellee, administrator, as plaintiff below, brought suit against appellant, defendant below, charging the latter with acts of negligence that resulted in the death of Harry A. Dickson, his intestate, to the damage of the estate. The case was tried before a jury, and the jury, after hearing the evidence and the arguments of counsel, under instructions to which no exceptions are taken, returned a verdict for $15,000, and judgment was entered for that amount in favor of plaintiff. The defendant appeals.

The pleadings and evidence show the following state of facts: Defendant copper company, prior to July 12, 1919, had partly constructed an upraise in its mine from the 600-foot level to the 400-foot level. The work had been done under contract, the defendant furnishing all tools, materials, appliances, and instrumentalities, and the contractor doing the work of constructing the upraise. On that date 130 feet of the upraise had been completed, there remaining about seventy feet to be done. The upraise was 7x19 feet, and on each end thereof as the work progressed a manway 3x3 feet was erected, in one of which a ladder was placed for the use of workmen in going to and from their work in the upraise. The middle space—that is, the space between the manways—was intended and used for a chute through which rock and waste escaped and fell from the roof of upraise as it was shot or blasted. The ladder consisted of 2x4 inch uprights on which were nailed 1x3 inch

crosspieces or rungs one foot apart, the extremities of which rested in notches cut in the face of the ladder, so that the rung, when in place, was flush with the face of the uprights. The defendant furnished the ladder to the contractor in sections ready to be put up, and it was erected by placing these sections end to end. Prior to July 12th no bulkhead was placed over the manway containing the ladder, and, as a consequence, rock and waste blasted or broken from face of upraise would fall down the manway and strike and break the rungs in ladder and sometimes destroy whole sections thereof. When the ladder was broken or injured, the contractor would repair it. If rungs were broken, he would replace them with new rungs, nailing them to the uprights in the same places the broken ones were nailed, or, if necessary, he would use a new section. Up about fifty feet from the 600-foot level there was a bulge in the cribbing, and the ladder was repeatedly struck and broken. The contractor testified that at this point "the ladder was apparently all right, but it was weak because it had been nailed in so many different times, and I was figuring that I would have to put in a new ladder any time." July 12th the deceased and Mike Baker entered into a contract with defendant to extend the upraise from the 130-foot point to the 400-foot level, or a distance of seventy feet, the defendant to furnish tools, material, and appliances, including ladder in manway. As before stated, there had not been theretofore any bulkhead over the manway containing the ladder, but Baker and deceased insisted that a bulkhead should be placed over this manway, and it was done by them on the company's time. Baker, who carried on the negotiations with defendant's superintendent, testified that the latter said to him, " 'Everything is ready to go to work.' I said, 'No; I want to fix the ladder.' He said, 'The

ladder is all right.'"  In this statement Baker was corroborated by one or two witnesses.  The superintendent denied making it.  Baker further testified:

That before he and intestate went to work "I climbed the ladder and tested the rounds as I climbed by pulling on them, and fixed four rounds about twenty feet above the 600-foot level.  I examined the ladder in the manway throughout its entire length, and I was unable to observe any defect in the ladder. My belief that the ladder was in good condition and reasonably safe was based on my inspection of the ladder and upon what Chaney [mine superintendent] told me.  There was no indication that it was in a weakened or defective condition at any point."

He further said, if the rungs had been nailed and renailed on the ladder, it would not have been disclosed to him for the reason that it was dark in the manway; that the broken parts of scantling would be covered by the rungs and could not be seen.  Baker finished his shift at 4 o'clock in the morning of July 16th, and when he descended the ladder "it seemed to be all right."  No rock fell down the manway from the shooting of holes made by Baker on his shift just before the accident and after he had descended.

The deceased started to work—this being his third or fourth shift—at 9 o'clock the morning of the 16th, and with him was one Chapman.  They were not seen again until the superintendent of defendant's mine, who was standing near the base of upraise, heard them fall and "light on the bottom of the upraise and hit the bulkhead."  He immediately went to them and found deceased lying on top of Chapman unconscious. Neither lived to tell how the accident happened.

The search for the cause of the fall was deferred for some time pending the arrival of the State Mine Inspector, but there is no serious contention that the condition of the ladder had been changed.  Four

rungs of the ladder about fifty feet above the bottom of upraise, the examination showed, were broken in two in the middle, and another (the one immediately above the broken ones) was pulled loose from the side of the ladder at one end, the nails being pulled out with the rung. The upright timber at the point where the end of the rung pulled loose was wet and rotten and badly splintered from being nailed and renailed, but this condition could not be seen as long as the end of the rung was in place.

The defendant had no actual knowledge of the condition of the ladder, although its superintendent had actual charge of the mine, both above and below, and was in active charge of upraise during its construction. The defense pleaded was assumption of risk, contributory negligence, and general denial.

Mr. Le Roy Anderson and Mr. G. P. Bullard, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellee.

ROSS, C. J. (After Stating the Facts as Above.)— At the close of plaintiff's case the defendant moved the court for a directed verdict "for the reason that the evidence wholly failed to show that the death of plaintiff's intestate occurred through any negligence on the part of appellant." The refusal to grant this motion is assigned as error. A motion of this kind is regarded as admitting the truth of whatever competent evidence the opposing party had introduced, and challenging its sufficiency to support a verdict. If, therefore, the plaintiff's evidence and the reasonable inference therefrom, considered, as they must be on this motion, in the strongest light against the defendant, were sufficient to support a verdict, the motion was properly overruled. It is only where the

evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict. *Stanfield* v. *Anderson,* 5 Ariz. 1, 43 Pac. 221; *Root* v. *Fay,* 5 Ariz. 19, 43 Pac. 527; *Roberts* v. *Smith,* 5 Ariz. 368, 52 Pac. 1120; *Haff* v. *Adams,* 6 Ariz. 395, 59 Pac. 111; *White Sewing Machine Co.* v. *Bradley,* 16 Ariz. 338, 145 Pac. 725; 26 R. C. L. 1065, §§ 74, 75; 38 Cyc. 1565 et seq.

In view of the rule stated, we think the court very properly refused to grant the motion for an instructed verdict. The assignment is very general and indefinite, but we are informed by the brief and argument thereon that it is the contention of defendant that "liability for negligence is not imposed in a case of this character because of the existence of a condition not discoverable by the exercise of ordinary care and diligence," and that it is not shown "that the ladder was in a defective condition when intestate entered upon the contract, and that he has wholly failed to show that defendant, by the exercise of ordinary care or diligence on its part, could have discovered any defect in the ladder." The defendant contents itself by the statement of these propositions without calling our attention to any governing rule as applied to this kind of a case. These contentions suggest an inquiry into the "character" of the case and the principles of law governing in its disposition. The defendant, under the contract as alleged and proved, obligated itself to furnish plaintiff's intestate and Baker, his partner, among other things, a ladder to be used by them in going to and from their work in upraise, the contractors to do all the work. This ladder, about 130 feet high, was in manway when the contractors took possession and began the execution of their contract. It was not constructed by defend-

ant, but by a contractor or contractors of defendant who had worked on upraise before deceased and Baker started to work under their contract. Neither deceased nor Baker had anything to do with the construction of the ladder. It was defective, and, although Baker had inspected it, on account of the defect being hidden, he had failed to discover it. While deceased was ascending the ladder to go to work, he fell, and it is the theory of plaintiff that the cause of his fall was due to the defective condition of the ladder, and that the defendant is responsible therefor. The general rule is that a contractor cannot recover damages from his employer for injuries he may sustain in the performance of his contract, and it is predicated upon the fact that the contractor has control and is bound, as every principal is, to provide for his own safety and protection. If the employer retains the right of control, or—as in this case—he agrees to furnish the instrumentalities to the contractor to be used in his work, and the latter is injured by reason of their being defective, a different rule comes into play. The rule deducible from the decisions is well stated in 14 R. C. L. 81, section 19, as follows:

"Where the employer reserves the right to direct the manner of the performance of the contract in any particular, or where he undertakes to provide any of the instrumentalities, he owes to the contractor and the latter's employees the duty of exercising reasonable care in respect to such matters."

The reason for such rule is that the law imposes upon every owner of premises the duty of keeping them in a reasonably safe condition so that anybody, whether contractor, servant, or invitee, lawfully thereon, may not be unduly exposed to danger. Thompson on Negligence, volume 1, section 679, says the contractor—

"Stands on the footing of a stranger, or, if he is injured through defect in the premises of the proprietor, he is entitled equally with a servant of the proprietor to invoke the principle that the proprietor stands under the absolute duty of taking reasonable care and exercising reasonable skill to the end that the premises, tools, and appliances put in the hands of his servant are reasonably safe for the purposes intended. If the contractor does not occupy this favorable position, he at least occupies a position as favorable as that of a person who is invited to come upon the premises of another, and who is injured in consequence of a dangerous pitfall thereon."

The rule, as above stated, is well supported by the decisions.

In *Meyhew* v. *Sullivan M. Co.,* 76 Me. 100, the plaintiff, a contractor, in going to and from his work in a mine, was injured by falling through a ladder hole recently constructed by defendant's superintendent. The defendant contended that the relation of master and servant existed, and invoked the fellow-servant doctrine to defeat plaintiff. This was disallowed, the court observing:

"But elaborate discussion of the relations of the parties to each other in this particular seems the more needless, because we are of the opinion that the case falls into that class which requires an employer at his peril to keep his premises and all ways of access thereto free from unknown dangers not naturally or commonly incident to the work to be carried on there, and makes him liable to his servants and employees, as well as to all others who are there by his invitation, for the existence of secret pitfalls which he negligently permits or causes to be made when damages thereby accrue without the fault of the injured party."

The same principle is stated by Judge COOLEY in *Samuelson* v. *Cleveland Iron Min. Co.,* 49 Mich. 164, 43 Am. St. Rep. 456, 13 N. W. 499:

"If the mine were in an unsafe condition when it was handed over to the contractors, and this was known to defendant, or by the exercise of proper care ought to have been known, and if in consequence a miner who was brought there in ignorance of the danger was killed, the defendant should be held responsible. Every man who expressly or by implication invites others to come upon his premises assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware."

In *Mulchey* v. *Methodist Religious Society,* 125 Mass. 487, defendant had erected a scaffold for the use of a contractor in painting the inside of a church and an employee of the contractor was injured by defects in the scaffold, and the court said:

"In the present case the society, through its authorized agents, had accepted and used the staging, and had in effect invited and induced Needham and his workmen to come upon it to paint the church, and was liable to any of them who suffered injury from the dangerous condition of the staging, which was not apparent to them and which was caused by negligence in its construction."

Other cases in which the employer has been held liable in damages to the contractor or his employees upon his implied warranty that the appliances furnished were reasonably safe are the following: *Roddy* v. *Missouri Pac. R. Co.,* 104 Mo. 234, 24 Am. St. Rep. 333, 12 L. R. A. 746, 15 S. W. 1112; *Laffery* v. *United States Gypsum Co.,* 83 Kan. 349, Ann. Cas. 1912A, 590, 45 L. R. A. (N. S.) 930, 111 Pac. 498; *Dawson* v. *Pacific Elec. Ry. Co.,* 177 Cal. 268, 170 Pac. 603; *McCall* v. *Pacific Mail S. S. Co.,* 123 Cal. 42, 55 Pac. 706; *Hagen* v. *Schleuter,* 236 Ill. 467, 22 L. R. A. (N. S.) 856, and note, 86 N. E. 112.

The ladder in its completed form and condition, at the time deceased and Baker started to work, had

been constructed and put together, as heretofore stated, by a previous contractor or contractors, and had by them been turned over to defendant who in turn, without any inspection, tendered it to the deceased and his partner as being safe and ready for use.

The rule which exempts one from liability whose duty it is to furnish instrumentalities to others, when he has exercised reasonable care in the inspection thereof, or has secured them from reputable manufacturers, cannot be invoked by defendant in this case.   The defendant is bound by the rule that makes the owner of premises, after accepting them from a contractor, liable for injuries caused to others lawfully thereon, when such injuries are the result of the defective and dangerous condition of said premises.

As was said by Judge FIELD in *Boswell* v. *Laird,* 8 Cal. 469–498, 68 Am. Dec. 345:

"Parties for whom work contracted for is undertaken must see to it before acceptance that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests, and that it is sufficient.   By acceptance and subsequent use the owners assume to the world the responsibility of its sufficiency. . . . "

It seems that, if the defendant knew, or ought to have known, or from a careful examination could have known, that the ladder was defective when it was turned over to the deceased and his partner, it is responsible for the injuries suffered by the deceased by reason of the defective construction of said ladder. *Hagen* v. *Schleuter supra; First Presbyterian Cong.* v. *Smith,* 163 Pa. 561, 43 Am. St. Rep. 808, 26 L. R. A. 504, 30 Atl. 279; *Choctaw Okl. Ry. Co.* v. *Wilker,* 16 Okl. 384, 3 L. R. A. (N. S.) 595, and note, 84 Pac. 1086.

The duty assumed by defendant to furnish reasonably safe appliances in the performance of the work was a nondelegable personal duty. Defendant could not turn over to the deceased a ladder erected by one of its previous contractors and when he was hurt by reason of its defective condition without his fault, say the defect was unknown to it; the fact being that the defect was due to the manner of constructing and repairing the ladder. *Mulchey* v. *Methodist Religious Society,* 125 Mass. 487.

It is next contended that the cause of intestate's death cannot be traced to the defect in ladder or accounted for except we indulge "presumptions resting on the base of another presumption," and that the proximate cause may not be established in that manner. Defendant refers to a great number of well-considered cases so holding, a leading one being *United States* v. *Ross,* 92 U. S. 281, 23 L. Ed. 707 (see, also, Rose's U. S. Notes). The facts in the present case do not place it within the rule claimed. The circumstances are clearly and quite definitely shown, and there is no dispute as to their existence. When Baker descended the ladder at four o'clock the rungs were in place and apparently all right. No rocks had fallen down manway, nor had anything else occurred to break the rungs from that time until deceased attempted to ascend the ladder. The deceased was heard to fall from ladder. At a point about fifty feet up from where his body struck in landing, the highest of five rungs was found pulled out of a wet and rotten upright, at one end, and the four immediately beneath broken in two.

From these proven facts the jury must inevitably have inferred or concluded that deceased had progressed in his ascent until his weight rested upon the rung that pulled out of the wet and rotten upright, and when that occurred, in an effort to prevent fall-

ing, the deceased successively grasped the four rungs beneath, only to have them, under the impact of his weight, break asunder, and in the meantime, the momentum of his body eluding all further efforts, he yielded to the inevitable and fell to his death. Such a conclusion would be an immediate and rational inference from the facts and circumstances proved. We have recently decided that the proximate cause is a question of fact for the jury and may be inferred from circumstantial evidence if it is substantial. *Inspiration Cons. Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88. See, also, *Valiotis* v. *Utah-Apex Mine Co.,* 55 Utah, 151, 184 Pac. 802.

The law is not so exacting as to require every fact and circumstance going to make up a case of negligence, or to identify the proximate cause, to be proved by eye-witnesses or positive, direct testimony.

As is said in *Silurian Oil Co.* v. *Morrell* (Okl.), 176 Pac. 964:

"It was not incumbent upon the Morrells to show by direct evidence the exact manner and cause of the injury; this may appear from the circumstances of the case. *Waters-Pierce Co.* v. *Deselms,* 18 Okl. 107, 89 Pac. 212; *Lichtenberg* v. *City,* 94 Wash. 391, 162 Pac. 534.

"The plaintiff in a civil cause is not required to prove his case beyond a doubt. All that the plaintiff upon this branch of his case is required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. *St. Louis & S. F. R. Co.* v. *Rushing,* 31 Okl. 231, 120 Pac. 973.

"It has been held that the presumption against voluntarily incurring danger is of itself some evidence of lack of knowledge of a latent defect (*Chicago & E. I. Ry. Co.* v. *Heerey,* 203 Ill. 492, 68 N. E. 76), and that, where there are no eye-witnesses, the love of life speaks as a silent witness against the assumption of risk, against contributory negligence, against suicide.

*Rober* v. *Northern P. Ry.*, 25 N. D. 394, 142 N. W. 22; *Atchison, T. & S. F. Ry. Co.* v. *Hill,* 57 Kan. 139, 45 Pac. 581; *Grimm, Adm'x,* v. *Omaha E. L. & P. Co.,* 79 Neb. 387, 112 N. W. 620.''

There is complaint that the jury disregarded the instructions, particularly the one that told them that it was not enough that they find the ladder defective, but that they must find from the evidence the injuries sustained were due to that particular defect. It is asserted that this was the law of the case and was binding upon the jury, and to this we assent, but there is nothing apparent in the record to indicate that it was disregarded by the jury. On the contrary, since, as we have seen, there was substantial evidence from which it might be inferred deceased fell because of the alleged defect in ladder, it should be assumed in support of their verdict that it was based upon the evidentiary facts justifying that inference.

It is next contended that the court erred in permitting the deposition of Mike Baker to be read to the jury in the absence of a showing that such witness was at the time without the limits of Yavapai county, where the case was pending. It is provided in paragraph 1713 of the Civil Code that—

"No deposition of a witness shall be permitted to be read in evidence unless the party offering the same, his agent, attorney or some competent person, shall first make oath that the witness is without the limit of the county where the suit is pending. . . . ''

When plaintiff offered this deposition, it appears from the abstract of record defendant objected to it on the ground assigned. Whereupon one of plaintiff's attorneys was sworn and testified:

"Mr. Baker left Arizona several months ago. He went to British Columbia. He advised me he was leaving for British Columbia. So far as I know, he is still out of the jurisdiction of the court.''

There was no cross-examination of the witness, and, without further objection, the deposition was read to the jury. Just why the defendant should object to the deposition being read before the preliminary hearing, and not after, it is difficult to understand, unless it was that defendant was satisfied with the showing. We think, if defendant wanted to preserve its objection for review, it should have renewed it after plaintiff's counsel testified, and, failing to do so, it waived the error, if it be one. It cannot be doubted that a party may give consent to the use of a deposition by his adversary, even if the witness is within the county where suit is pending at the time of trial, and we see no reason why this consent may not be inferred from his failure or neglect to make timely and proper objections. We are therefore of the opinion that the state of the record does not call for a determination by us of the sufficiency of the preliminary showing made by plaintiff to entitle the deposition to be read.

We hold that, no objections having been made by defendant to the reading of the deposition after the plaintiff had made his preliminary showing, its admission in evidence was proper.

Defendant complains that the verdict is excessive, and that it was given under the influence of passion or prejudice. The deceased was twenty-six years and eight months old, of good habits and in good health, earning at his occupation as a miner, from $6 to $6.40 per day, at the time of his death. Under our statute the action is maintainable by the personal representative for the benefit of the estate of the deceased, and whatever is recovered becomes assets thereof. Paragraphs 3372–3374, Civ. Code; *Southern Pac. Ry. Co.* v. *Wilson,* 10 Ariz. 162, 85 Pac. 401; *De Amado* v. *Friedman,* 11 Ariz. 56, 89 Pac. 588.

.In the Wilson case the court said:

"The statute provides that the jury shall give such damages as they deem fair and just, not exceeding $5,000. Where there are no fixed rules to ascertain the amount of damages, the amount must be left to the sound sense and good judgment of the jury, upon all the circumstances of the case; and such verdict should not be set aside, unless it appears that the jury acted under some bias or prejudice, or other improper influence."

The limitation of $5,000 damages has been removed, and the rule stated, with that exception, is applicable to the law as it now exists. Under a statute like ours—in that it makes the recovery a part of the estate of the deceased—the Supreme Court of Oregon, in *Perham* v. *Portland Electric Co.*, 33 Or. 451, 72 Am. St. Rep. 730, 40 L. R. A. 799, 53 Pac. 14, announced the rule that the value of the life lost should be "measured, as near as can be, by the earning capacity, thriftiness, and probable length of life of the deceased, and the consequent amount of probable accumulations during the expectancy of such life." *Jennings* v. *Alaska Treadwell Gold M. Co.*, 170 Fed. 146, 95 C. C. A. 388.

The evidence shows that the expectancy of life of the deceased was 37.43 years. Of course, it is always very difficult to determine what any person would have accumulated at the end of his life and left as his estate, because it depends upon so many varying factors. The statute seems to place the duty of arriving at this amount solely upon the jury, with the one admonition that they "shall give such damages as they shall deem fair and just." The measure of damages in a case where they become an asset of the estate differs from the measure of damages where they are recovered by particular beneficiaries, in that in the latter the damages are limited to compensation,

whereas in the former they represent the probable accumulations of the deceased had he lived his allotted time according to mortality tables. *Perham* v. *Portland Elec. Co., supra.* We cannot say that the amount of the verdict in this case was "so disproportionate to the result of any reasonable computation" as to indicate bias or prejudice. *Insp. Cons. Copper Co.* v. *Conwell, supra.* Computations based on the earning power of deceased and his expectancy of life can readily be made of an amount equal to the verdict. In the nature of things, it is humanly impossible to arrive at exact results because of the variableness of the factors entering into the computation. His life might have proved to be worth more or less than the verdict. We cannot say.

The judgment is affirmed.

BAKER and McALISTER, JJ., concur.