232 P.2d 390

**BARKER et ux. v. GENERAL PE-TROLEUM CORP. et al.**

No. 5285.

Supreme Court of Arizona.

June 11, 1951.

Opinion Modified on Rehearing July 12, 1951.

See 72 Ariz. 238, 233 P.2d 449.

Camp Verde, Arizona, and used products of the General Petroleum Corporation delivered to them by its agent, appellee W. F. Simpson, who had a wholesale agent's contract with the appellee corporation to deliver and distribute its products in that territory. In the latter part of 1947, Simpson had a young man working for him by the name of Robert Bland.

For the purpose of selling to appellants, one of the products of the appellee corporation known as stove gas, Simpson installed in the back, or store room of the service station, a certain container. The container belonged to the appellee corporation. In the said store room, at a point about 18 feet from the stove gas container, was an automatic Butane hot water heater with a pilot light which burned continuously.

The container of stove gas was filled by appellee Simpson or his employee Bland, by driving the truck near the door of the store room, then filling a 5 gallon can at the truck and carrying it into the store room and pouring the contents into the container through a square funnel capable of holding several gallons. The funnel was supported by being placed in the bunghole of the container.

Not only had appellant Barker complained to Simpson, but he had often warned Bland of the danger of overflowing the stove gas and letting it run out upon the floor because of the fire that might be ignited by the pilot light in the hot water heater.

Morgan & Locklear, of Phoenix, for appellants.

Moore & Romley, Struckmeyer & Struckmeyer and Jack C. Cavness, all of Phoenix, for appellees.

STANFORD, Justice.

This is an appeal from a judgment entered on a directed verdict of the superior court against appellants, and from the court's order denying appellants' motion to set aside the judgment and motion ·for a new trial.

Appellants, plaintiffs in the action, owned and conducted a service station at

On the morning of June 3, 1948, Bland made delivery of gasoline and stove gas to the service station of these appellants between the hours of 9:30 and 10:00. He filled the storage tanks in front of the station with gasoline, then drove his truck near the stove gas container and proceeded to fill it. Appellant Barker, who was serving customers at the front of his station, went into the store room for some oil, and found a quantity of stove gas on the floor and Bland was attempting to drain some of the excess out of the barrel. Barker severely criticized Bland and while he was returning to the front of the station, there was a flash and a fire had commenced, in consequence of which the storeroom and station were wholly consumed by fire. Appellants also suffered damages by the loss of their grocery store, the stock therein, the equipment and fixtures, their gasoline pumps and stock and equipment in their service station, a trailer court and other things.

Action was brought against the corporation and Simpson, alleging negligence, on the theory that they were principal and agent. After appellants had introduced their evidence in the cause and rested their case, counsel for the appellees moved for an instructed verdict. Motion was made for the corporation on the ground that there was no evidence showing any relationship between the corporation and Bland which would hold the corporation responsible for the actions of Bland, and likewise that there was shown to be no relationship be-

tween the corporation and Simpson which would render the corporation responsible for any negligence on his part, and on the further grounds that there was shown to be no negligence on the part of the corporation. The motion was made in behalf of Simpson on the ground that there was no negligence shown on the part of any person; neither the appellee Simpson nor any one for whom he was responsible. From an order of the court granting the motions, a verdict rendered accordingly and judgment entered thereon, this appeal is taken.

The appellants have submitted the following four assignments of error:

(1) "The court erred in directing a verdict for the defendants, in denying plaintiffs' motion to set aside directed verdict and judgment, and in failing to grant a new trial for the reason that the evidence disclosed that plaintiffs' losses resulted from negligence of their servant and agent while acting in the due course of his employment.

(2) "The court erred in failing to submit as a question of fact to the jury the issue of negligence since the inferences and conclusions to be drawn from the facts were for the jury and not for the court.

(3) "The court erred in rendering a judgment in favor of defendants and against plaintiffs, and the judgment is clearly contrary to the facts and the law.

(4) "If, as a matter of law, it should be held that the allegation of the first cause of action of the amended complaint does

not sufficiently set out the act of negligence from which the fire resulted, causing damage to plaintiffs, then the court erred in striking the third cause of action of said amended complaint, which specifically refers to the spilling of the gasoline product."

. The appellee corporation has submitted the following cross assignment of error:

"The court erred in admitting in evidence a copy of the written contract between defendants General Petroleum and Simpson with paragraphs 5 and 8 deleted and without also requiring plaintiffs to offer in evidence 'Company's Wholesale Agent's Manual No. M–3', incorporated into the contract by reference, for the reason that the relationship created by the contract between the parties, their respective rights, obligations and liabilities thereunder each to the other and to strangers could be determined only by reading the instrument and the one incorporated as a part of it . by reference together as a whole."

Paragraphs 5 and 8 were deleted because they referred to indemnity insurance, something which could not be submitted to the jury as part of plaintiffs' case, but which was before the court.

There are two issues presented by this appeal: (1) was Bland guilty of actionable negligence, and (2) if so, are the appellees, or either of them liable for such negligence?

The testimony in this case shows that on June 3, 1948, there existed between the two appellees a contract known as a Wholesale Agent's Contract, by the terms of which Simpson was appointed a wholesale agent for the appellee corporation "for the distribution and sale of only those of Company's products distributed and sold under its brands" for the Verde Valley territory including Camp Verde.

As we proceed with a discussion of the issues herein, we shall take it for granted that, under this court's opinions, motions made by these appellees are, regarded " * * * as admitting the truth of whatever competent evidence the opposing party had introduced including the reasonable inferences to be drawn therefrom, and it is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict. Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881; Dieterle v. Yellow Cab Co., 34 Cal.App.2d 97, 93 P.2d 171." Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, 204.

As shown in the above quoted cross assignment, it is the position of the appellee corporation that this contract was erroneously admitted without the Wholesale Agent's Manual being attached thereto. With this contention we concur.

Provision No. 3 of the contract, specifically provided that the manual was made a part of the contract, which was offered in evidence for the purpose of showing the relationship that existed between the corporation and Simpson, and without considering the provisions of the manual with the contract, a full picture of that relationship is impossible. Objection was made by the corporation at the time the contract was offered, to its admission without the inclusion of the manual. We hold however that under the provisions of section 3, the admission of the contract into evidence had the effect of carrying with it the manual as an integral part thereof.

Our first consideration will be directed toward the relationship between Simpson and the corporation to determine the responsibility of the corporation and Simpson for the alleged acts of negligence on the part of Bland.

Without considering the material in the contract, the uncontradicted testimony in the trial court shows that Simpson was a wholesale agent of the corporation and that he made deliveries of products of the corporation, which products remained the property of the corporation until delivered and title was passed to the purchasers, that the purchasers were billed for such deliveries by the corporation and that they made payment either directly to the corporation or to Simpson who then remitted the entire amount to the corporation without making deduction, the corporation then paying Simpson's commission to him for the transaction. Additional evidence of record shows that appellant Barker was one of many dealers receiving deliveries from Simpson. These dealers purchased the products delivered by Simpson, pursuant to a contract between them and the corporation. There is no evidence that Simpson was ever a party to one of these contracts, and in fact his name appears no where on the contract between Barker and the corporation, either as agent or otherwise. Testimony also clearly shows that Simpson often received oral instructions from members of the corporation staff pertaining to the sale and delivery of the corporation's products, which was his duty exclusively, as well as to plant operations and all phases of the business in general.

Without further discussion, we think it clear that Simpson's position was not that of an independent contractor, as argued by the corporation, but he was clearly an agent of the corporation, performing duties outlined by the corporation. We quote from our case of Swansea Lease, Inc. v. Molloy, 20 Ariz. 531, 183 P. 740, 743:

"The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The one indispensable element to his char-

acter as an independent contractor is that he must have contracted to do a specified work, and have the right to control the mode and manner of doing it. (Citing cases)

"An independent contractor is not in any legal sense a servant of his employer, but is one exercising an independent employment under a contract to do certain work by his own method, without the suggestion or the control of his employer, except as to the product or result of the work. (Citing cases.)"

As pointed out, the trial court erred in failing to admit the manual as part of the contract. In view of the provision of the contract admitted into evidence, which made the manual a part of the contract, we shall consider the material in the manual as admitted in and a part of the evidence, and briefly discuss some of the provisions thereof as well as the contract. In addition to incorporating the provisions of the manual, the contract also reserved the right in the corporation to supplement, change, or modify the provisions of the said manual upon giving Simpson ten days' notice, after which he would be bound by any such additions. The contract also provided that Simpson should furnish the corporation with a complete list of all men employed by him, and should carry compensation insurance on all such employees with a company which was satisfactory to the corporation. In making such provisions, the corporation clearly recognized the necessity for Simpson's hiring men to assist in his work, and made allowances for such employment. The manual provided that Simpson should make all deliveries on a cash basis unless specifically otherwise authorized by the corporation, and that all deliveries were to be made to customers who were parties to one of the above mentioned dealers contracts with the corporation, and that the corporation was to accept or reject such contracts as it saw fit.

Very closely associated with the facts in the present case is the case of Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 873, 116 A.L.R. 449, in which the defendant Refining Co. was held liable for the death of the plaintiff's husband, which resulted from the negligence of one of the subagents, employed by defendant's distributor-agent, one Ford, in selling to the deceased, as kerosene, a mixture of gasoline and kerosene. In that case, as here, the defendant Refining Co. contended that Ford was an independent contractor and that the subagent was an employee of such independent contractor. The contract between Ford and the defendant Refining Co. was very similar to the one herein, between appellee Simpson and the appellee corporation. In analyzing the relationship between the defendant and Ford, the court in the Gulf case above said:

"When all of the facts are considered, it is seen that Ford's control over the business was limited indeed and that it

was well-nigh within the power of the company as a practical matter to dictate his every action. The company owned the goods, fixed the price, limited him to cash sales or credit terms which it imposed, owned and controlled the disposition of the proceeds of sales, and required the use of signs indicating that the station, the goods, and the trucks (contrary to fact) were its own. It was a consignment business so arranged as to leave little or no discretion to the consignee in the sale of the goods. His province was merely to find customers, make deliveries, and collect the money. There was some leeway in the choice and management of employees and in the amount of their salaries which the distributor was required to pay out of his commissions. But even here the company was the dominant figure. It stipulated that the distributor carry workman's compensation insurance and exacted an agreement of indemnity from the distributor as to the delicts of his employees, promises quite unnecessary if it had no responsibility for their acts. Finally it forbade the assignment of the contract and reserved the right to terminate it at will at any time on ten days' notice and thus completely put an end to the distributor's opportunity to profit by the connection.

"Some conflict of authority has arisen as to whether the distributor, under such a contract, is an employee of the oil company, or an independent contractor for whose delicts the company has no responsibility. Some courts have thought that the oil company has no right to supervise deliveries, select the number and character of the vehicles, choose the employees engaged in delivery, fix their wages, or control the manner in which delivery should be made; and hence have concluded that the relationship of independent contractor was created. (Citing cases.) But the decided weight of authority is to the contrary. Facts like those pointed out above as indicating a very complete control by the company of its products during the process of sale and delivery have been found determinative, and it has been decided that the oil company has not only held out the distributor as its employee, but has controlled and directed him in important particulars and in practical effect has retained power to subject him in the course of the business to its will and direction in any respect in which it might choose to do so. (Citing cases.)"

And further, regarding the liability of the defendant Refining Co. for the negligence of the subagent, employed by the distributor Ford in the conduct of the business:

"It is suggested, however, in accordance with a few of the decisions, that even if the distributor in this case were an agent or employee of the oil company, it does not follow that the company was responsible for the negligence of the helpers and employees whom he was expressly au-

thorized under the contract to appoint to assist in the delivery of the goods and to manage and control at his own risk. * * *

"It is clear that a principal may not escape liability to third persons for the torts of a subagent, appointed by his agent with his consent, merely by entering into a contract with his agent under which the latter assumes sole responsibility for the subagent's conduct. The responsibility of the principal to third persons imposed by law may not be so lightly disposed of. The important question in every case is whether the agent is in truth an independent contractor or the servant of the principal. If the latter relationship is found to exist and the acts to be performed are in the course of the business upon which the servant is employed, the liability of the principal is the same whether they are performed by the servant, or by an assistant duly appointed. Any other conclusion would effectually nullify the responsibility of the principal for many of the tortious acts that are committed under conditions of modern life. In the cited cases in which the relationship of independent contractor was thought to exist, the oil company was held responsible not only for the conduct of the distributor, but also for the conduct of his assistants or servants. (Citing cases.)"

To reiterate, we are of the opinion that the evidence is clear and unequivocal to the effect that Simpson was nothing more than an agent of the corporation, and was in no sense an independent contractor.

We next take up the discussion of the actions of Bland in connection with the damage sustained by appellant Barker, and the liability therefor. Appellees contend that there was no actionable negligence shown on the part of Bland, and that if such were the case, there was no proximate cause shown between such negligence and the resulting damage.

The testimony clearly shows that Bland had been many times warned of the danger of overflowing the container used for stove gas and it is our view that plaintiff has definitely shown actionable negligence in the case. We quote from Hughes v. Shanafelt, Okl.Sup., 218 P.2d 350, 352: "The elements of actionable negligence have been pointed out numerous times. Negligence may consist of the failure to use reasonable care, and what is or is not negligence is a question for the jury, especially where the standard or such duty is not fixed but variable. City of Stilwell v. Bone, 195 Okl. 325, 157 P.2d 459; A & A Cab Operating Co. v. Drake, 200 Okl. 229, 192 P.2d 1004."

Appellees' next contention is that no act on the part of the truck driver Bland could be considered the proximate cause of plaintiffs' damage. We quote from Chapman v. Salazar, 40 Ariz. 215, 11 P.2d 613, 615: " * * * the proximate cause of an injury is that which, in a natural and continuous sequence, un-

broken by any new cause, produces an injury, and without which the injury would not have occurred."

While several cases have been submitted on this subject by the appellant we think it unnecessary to dwell on them. It is our opinion that while this is a case where more than one cause concurred to produce the injury, such would not have resulted had it not been for the negligence of Bland, after repeated requests over a period of six months as the record shows, to be careful and not allow the stove gas to overflow. Under the circumstances we hold that the negligence of Bland was the proximate cause of the damage. See also Beltran v. Stroud, 63 Ariz. 249, 160 P.2d 765; Nichols v. City of Phoenix, supra.

█ Our last question for determination is the liability of Simpson and the corporation for the negligence of Bland, who, being employed by Simpson, became a subagent of the corporation. The case of Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965, 967, expresses the law on this matter, and we quote: " * * * an agent is not liable to third persons for the misfeasance of a sub-agent in the service of his principal, unless he is guilty of fraud or gross negligence in the choice of the sub-agent or improperly cooperates in the latter's acts. Hilton v. Oliver, 204 Cal. 535, 269 P. 425, 61 A.L.R. 297; Smith v. Rutledge, 332 Ill. 150, 163 N.E. 544, 61 A.L.R. 273."

Likewise in 2 Am.Jur., Agency, section 203, we find the following: "With respect to the relation between the agent and the third person as concerning the appointment of a subagent, the general rule is that an agent is not liable to third persons for the malfeasance or misfeasance of subagents employed by him in the service of his principal unless he is guilty of fraud or gross negligence in their appointment, or unless he improperly co-operates in the acts or omissions of the subagent."

█ Accordingly we hold that Simpson is not liable for any of the acts of Bland in question herein, and direct that the judgment of the trial court be affirmed as to the appellee Simpson. As to the appellee corporation, we hold that the trial court was in error in directing the jury to return a verdict in its favor and we hereby direct that the judgment be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concurring.