JULIA KIBIUK, Plaintiff, *v.* WINDSOR RESIDENCES, INC., et. al., Defendants.

City Court of New York, Trial Term, New York County, May 3, 1944.

*Alfred S. Julien* and *Theodore Kamens* for plaintiff.

*William Cohen* and *Irving Segal* for Windsor Residences, Inc., defendant.

*Francis M. Greene* for Dry Dock Savings Institution, defendant.

CARLIN, J. In this action plaintiff sues to recover for personal injuries and property damage sustained at a fire which occurred

on July 14, 1942, where she was a tenant in premises then owned by the defendant Windsor Residences, Inc., under a deed delivered to it by defendant Dry Dock Savings Institution, on July 2, 1942; for the purposes of brevity the defendants hereinafter shall be referred to as Windsor and Dry Dock. The uncontradicted facts show that the premises were a multiple dwelling accommodating ten families who used in common a certain dumb-waiter to carry their garbage to the basement for collection by the janitor. About six or seven weeks before the fire, while Dry Dock still owned and controlled the premises, the tenants were advised by its janitor to throw their garbage down the dumb-waiter shaft because of a break in the rope which regulated the hoist; the same janitor was retained by Windsor when it took possession and the same practice for garbage disposal was tolerated and encouraged by the same janitor due to the same defect in the dumb-waiter rope which was not repaired up to the time the fire broke out. It appears that on occasions the janitor would remove the garbage from the well of the dumb-waiter but, according to plaintiff, there was an accumulation of garbage approximately six feet high in the bottom of the shaft on the day before the fire took place; both plaintiff and her witness, Mrs. Grassi, testified to another significant fact; they both stated that the dumb-waiter shaft showed exposed wood with no plaster. About 5 A.M. on July 14, 1942, a fire was discovered in the shaft from which the flames soared causing the doors of the shaft in the apartments of Mrs. Grassi and plaintiff to fly off; the plaintiff was dragged from her burning apartment by firemen and suffered burns and other injuries; her furniture and personal effects were consumed by the flames. In the foregoing substantial particulars of the fire and conditions in the dumb-waiter shaft, the plaintiff and her witness, Mrs. Grassi, were undisturbed by cross-examination which in the main was conducted by Windsor with little aid from Dry Dock; the cross-examination of plaintiff was largely confined to the attack on her claim for property damage; as defendant, Windsor, rested at the close of plaintiff's case without adducing any evidence in defense the court may not consistently disregard as unworthy of belief the testimony of plaintiff and Mrs. Grassi regarding the use of the dumb-waiter shaft as a receptacle for garbage, as well as the condition of the walls of the shaft. (*Hull* v. *Littauer,* 162 N. Y. 569; *Psota* v. *Long Island R. R. Co.,* 246 N. Y. 388; *Rolfe* v. *Hewitt,* 227 N. Y. 486.) Defendant Windsor contends that plaintiff has not proven the cause of the fire and certainly has not causally

connected the fire with any accumulation of garbage and, therefore, disclaims liability; said defendant makes no reference in its brief to the walls of the dumb-waiter shaft so graphically described by plaintiff and Mrs. Grassi — those walls without plaster which showed wooden slats; Windsor regards this condition as an "airy nothing" but plaintiff and her witness gave it "a local habitation and a name", to wit: the dumb-waiter shaft in a tinderbox. Defendant Windsor, in its brief, also naively urges that "it is important to point out that defendant, Windsor Residences, Inc., was guilty of a violation of no statute or ordinance"; defendant is unquestionably right if the provisions of sections C26–1132.0, C26–646.0 and C26–663.0 of the Administrative Code of the City of New York (L. 1937, ch. 929) are impertinent; those sections with a purpose to subserve the safety of tenants provide that enclosures such as hoistways and dumb-waiter shafts, together with the doors opening thereon, shall be constructed and maintained with fire-resistive materials; defendant rightly argues that the court may not speculate on the question of negligence but that argument cannot consistently preclude the inference which the court as the trier of the facts may draw from the aforesaid description of the shaft by the plaintiff and her witness that it was not fire-retarded and that, therefore, defendant Windsor in its ownership, operation and control of this multiple dwelling even for but twelve days before the fire was violating the aforesaid sections of the Administrative Code in its maintenance of the dumb-waiter and the doors aforesaid without fire-resistive materials; when it took possession from its grantor, Dry Dock, this condition was patent and readily discoverable in a part of the premises peculiarly controllable by said defendant; this condition was unlike that which may exist in an apartment where the owner might be barred from inspection by the tenant and, therefore, not liable for lack of actual knowledge or notice of the defect.

At the close of the plaintiff's case decision was reserved on a motion by defendant Windsor to dismiss the complaint, whereupon said defendant rested and renewed its motion; the court again reserved decision. The court, however, granted the motion by defendant Dry Dock to dismiss the complaint when plaintiff rested, on the ground that said defendant had parted with possession and control of the premises twelve days before the fire and was not, therefore, in the same position as the defendant in *Pharm* v. *Lituchy* (283 N. Y. 130) where as the former owner he had become aware of a dangerous condition in an apartment

four days before he sold the premises, without advising the new owner of the condition which caused injury to the plaintiff the day after the new owner came in·possession; there the court said at page 132: " The jury has found that the ceiling was in a dangerous condition. The law makes this a nuisance, and liability of the owner in such case persists beyond conveyance *at least until the new owner has had reasonable opportunity to discover the condition on prompt inspection and to make necessary repairs.* So far, liability must extend, and that includes this case." (Italics supplied.) But is the principle of the *Pharm* case applicable to the instant case? There the defect was only known to the former owner who did not divulge his knowledge to the grantor; there, not as in the case at bar, the new owner did not have " reasonable opportunity to discover the condition on prompt inspection and to make necessary repairs "; in our case we have a condition openly notorious insofar as the lack of fire retarding material in the dumb-waiter shaft and its doors on the day Dry Dock conveyed to Windsor the multiple dwelling in which such conditions existed. The record is silent regarding the preliminaries to the conveyance by Dry Dock to Windsor; whether it resulted from a bid at a judicial sale or was the consummation of a private contract between defendants was not established at the trial; naturally the plaintiff was not called upon to adduce the facts regarding the transaction which resulted in the passage of title. Under the circumstances it does not appear to the court as unwarranted in drawing upon its professional experiences and indulging in a reasonable presumption that before the deed was delivered there was an appreciable lapse of time between the date Windsor became obligated to take a deed to the premises either by bid at a judicial sale or under private contract. The instances are rare indeed when the closing of title takes place on the day the property is bid in or the contract for its purchase and sale is executed; so it follows in the instant case that defendant is deemed to have had knowledge of the aforesaid condition before it took title; that title was taken with knowledge of and acquiescence in the condition of the dumb-waiter (sans garbage) unprotected against inflammability or the spread of fire which compliance with the aforementioned provisions of the Administrative Code of the City of New York would have tended to prevent or retard were those ordinances more honored in the observance than in the breach. The defendant Windsor with eyes focussed on an apparent violation took title from its grantor who tolerated the violation up to its conveyance. The plaintiff has

not brought defendant Dry Dock within the principle enunciated in the *Pharm* case (*supra*) even though the condition of the dumb-waiter shaft was countenanced and maintained by said defendant for at least a month before its conveyance to Windsor; in the court's opinion the twelve-day lapse of time between the conveyance and the fire in a part of the premises openly visible to its grantee, Windsor, distinguishes the status of Dry Dock from that of the former owner in the *Pharm* case; because of this distinction the complaint as against defendant Dry Dock in the instant case was dismissed. Windsor concedes that the tenants disposed of their garbage in the manner and by the permission hereinbefore indicated but is intolerant of any inference that this was the cause of the fire; as for plaintiff, she only knows she had been in bed about two hours when she was roused from her sleep by the fire and could only testify, along with Mrs. Grassi, that it roared through the shaft and burst the doors of her apartment to the shaft. The court, over objection of defendant, allowed in evidence a portion of the record of the Fire Department of the City of New York offered when one Shaughnessy, from the Bureau of Investigation, was on the stand as a witness for the plaintiff. The record, in the part admitted in evidence, read: " Exam. showed fire originated at bottom of dumb-waiter shaft extending via shaft to rear of all floors and then roof ". Defendant contends that this is mere hearsay; in the court's opinion it is not; the Fire Department with its scientific methods to discover the causes of fire and with its experience in determining the place in a building where a fire starts may state in its record that a fire originated in a definite place. This is not predicated on hearsay but is a statement of a fact ascertained by those trained to learn; incidentally, the part of the record in evidence only refers to where the fire started and to its extent and does not express an opinion regarding its cause; this differentiates it from the report of a police officer containing a record of the cause of an accident and which is inadmissible unless the officer who makes the report is an eyewitness to the occurrence. (*Johnson* v. *Lutz*, 253 N. Y. 124.) In the court's opinion the statement by the Bureau of Investigation of the Fire Department in its report as to the place where the fire started made after the employees of said department were on the scene during the fire is properly admissible. Defendant argues that because the fire was in the dumb-waiter shaft it cannot be held that the presence of any garbage there was the cause of the fire. In its brief, defendant says " For all that appears in the record to the contrary the garbage

in the bottom of the shaft may have consisted only of moist matter and would have retarded the progress of any fire ''; this argument also avoids — perhaps advisedly — any reference to the wooden exposure of the walls of the shaft. But is garbage only moist matter? Garbage is defined, among other things, as '' waste of any kind '' (Funk and Wagnall's New Standard Dictionary [1925]); certainly it would be unreasonable to limit the tenants to the interpretation given the word '' garbage '' implied in defendant's narrow construction of the stuff of which garbage is made. Tenants are not so nicely discriminating, as many a garbage can proves; newspapers, rags and other inflammable materials find their way into such receptacles despite official admonitions and threats of fine. Was it not reasonably foreseeable by defendants that the tenants so advised would throw more than mere '' moist matter '' down the shaft? Was it not further foreseeable by defendant that even '' moist matter '' would splash on the exposed wood and that it, often consisting of fatty substances, would dry on those wooden walls rendering them so much more inflammable? Was it not further within the foreseeable by the defendant that newspapers and rags — which also may be garbage in certain relations — might stick to the exposed wood of those walls rendering them also more inflammable because of their lack of fire-resistive materials? The defendant's argument that the '' moist matter '' may have been such as would have retarded the fire is not considered as being seriously urged; '' putting fat on the fire '' has not been adopted by the Fire Department as a means of extinguishing a fire nor has any innovator suggested this substance as a substitute for water even when that natural enemy of a flame runs low.

Defendant argues that the record is barren of proof that any act on its part caused the fire; that for all that appears the fire was started by a child (between 3:00 and 5:00 A.M.) or resulted from a tenant's throwing into the shaft a mattress set ablaze by his cigarette and that the defendant should not be held liable for the act of a third party over whom it had no control; the court agrees with the defendant that '' proof of negligence in the air, so to speak, will not do '' (*Martin* v. *Herzog*, 288 N. Y. 164, 170; *White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131, 135), and further, that the landlord is not an insurer under the Multiple Dwelling Law (*Collins* v. *Noss*, 283 N. Y. 595). There necessarily must be a causal connection established between the actions of defendant in permitting the accumulation of garbage, in maintaining the shaft with the

wood of its sides uncovered by any fire-resistive material and the damage sustained by plaintiff from the fire. (*Harper* v. *Remington Arms Co., Inc.,* 156 Misc. 53, 55.) While sections 80 and 81 of the Multiple Dwelling Law, respectively, provide for the owner keeping the premises free from garbage and supplying proper receptacles for the deposit of and removal of garbage, it may be considered as speculative if there was a finding that the garbage, standing alone, in the shaft caused the fire, but there is nothing conjectural in finding that the failure to fire-retard the walls and doors of the shaft is some evidence of negligence on defendant's part. " Under the facts of this case, the evidence of the defendant's negligence created a question for the jury's consideration as to whether the failure to guard the scaffold as required by law established causal connection between the lack of guards and plaintiff's injury. The jury might reasonably have found that the plaintiff's injury was the direct result of the defendant's negligence. *The plaintiff was not required to offer evidence which positively excluded every other possible cause of the accident."* (Italics supplied.) (*Rosenberg* v. *Schwartz,* 260 N. Y. 162, 166, a case in which plaintiff was struck by a brick which might have fallen from construction work around which no scaffolding was placed as required by section 194 of article 10 of the Building Code of the City of New York.) " The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident, does not require a holding that plaintiff has failed to make out a *prima facie* case. It is enough that he shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred " (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7). " Inference is never certainty, but it may be plain enough to justify a finding of fact " (*Tortora* v. *State of New York,* 269 N. Y. 167, 170). As this case was tried by the court alone it stands as did the jury in *Rosenberg* v. *Schwartz* (*supra*) and may be allowed to draw an inference if it is " plain enough to justify a finding of fact " as in the *Tortora* case (*supra*). Granting that the carelessness of a third party might have caused the fire in the shaft, is it an unreasonable or a farfetched conjecture for the court as the trier of the fact to hold that the defendant could have anticipated the dire effect of such carelessness by its failure to forestall the spread of a fire so caused by the lack of installation of fire-resistive material in the walls of the shaft and its doors? (*Powell* v. *Jaffe,* 177 N. E. 523, 524 [Ohio]; *Matter of Guardian*

*Casualty Company,* 253 App. Div. 360, 362.) In this court's opinion the natural and probable consequences of defendant's failure to fire-retard, as aforesaid, and the permission given to the tenants to use the shaft as the receptacle of their garbage which could contain inflammable materials was the proximate cause of the spread of the fire, no matter how it originated, and the spread of the fire by defendant's failure to comply with the ordinances, hereinbefore referred to, directly caused the fire to spread to plaintiff's apartment to her personal injury and property damage; if consequences are reasonably foreseeable the liability will extend to all consequences though, as defendant argues, they may be novel or extraordinary. (*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339.) There was nothing novel or extraordinary in the damages sustained by plaintiff; they were the natural and reasonably foreseeable consequences of defendant's commission (accumulation of garbage) and omission (failure to fire retard its dumb-waiter shaft and doors) in concurrence.

Motions by defendant Windsor to dismiss the complaint upon which decision was reserved are denied with exceptions to said defendant. Judgment for plaintiff against defendant Windsor Residences, Inc., is granted in the sum of $1,829; of this amount $530 is awarded for personal injuries, burns and medical expenses, and $1,299 for damages sustained in the loss of personal effects and furniture and household furnishings. On the question of damages sustained because of loss of personal effects, furniture and like articles which have no market value defendant is referred to the leading case of *Lake* v. *Dye* (232 N. Y. 209, 214) and *MacGregor* v. *Watts* (254 App. Div. 904); *Grafstein* v. *A. Santini Storage Co.* (26 N. Y. S. 2d 125, affd. 42 N. Y. S. 2d 496).

Findings of fact and conclusions of law having been waived, let the clerk enter judgment accordingly. Ten days' stay of execution is granted defendant Windsor Residences, Inc., and to plaintiff on any judgment which defendant Dry Dock Savings Institution may enter against plaintiff dismissing her complaint after service of copies of said judgments with notice of entry; thirty days to make a case in each instance.