[Civil No. 1657.   Filed May 3, 1919.]

[180 Pac. 446.]

CHARLES KORRICK, Assignee for the Benefit of the Creditors of J. W. ROBINSON & SON, Appellant, v. J. W. ROBINSON and IRL R. ROBINSON, Copartners Doing Business Under the Firm Name and Style of J. W. ROBINSON & SON, J. W. ROBINSON, Guardian of the Estate of IRL R. ROBINSON, a Minor, and C. R. ROBINSON and GLENDALE STATE BANK, a Corporation, Appellees.   .

1. APPEAL AND ERROR—REVIEW—WEIGHT OF EVIDENCE.—It is not the province of the supreme court to weigh the probative force and effect of the evidence.

2. APPEAL AND ERROR—REVIEW—FINDINGS ON CONFLICTING SUBSTANTIAL TESTIMONY.—An appellate court will not disturb the findings of fact of the trial court based on conflicting evidence, when they are supported by any substantial testimony.

3. TRUSTS—FOLLOWING TRUST FUNDS—GUARDIAN'S USE OF WARD'S PROPERTY—ORDER OF COURT—EFFECT.—Order of superior court, giving father as guardian of his minor son the privilege to use the son's money in mercantile business, did not divest the funds of their trust character, and create the relation of mere debtor and creditor; the right still remaining in son after insolvency of business to follow fund or proceeds in shape of other property and retake what rightfully belongs to him.

4. TRUSTS—FOLLOWING FUNDS OF WARD—TRUST ON SPECIFIC PROPERTY—IDENTIFICATION.—Where father, guardian of his son, obtained order of probate court permitting him to use his son's money in his own mercantile business, and thereafter business became insolvent, evidence that son's money was used in business was not sufficient showing to impress trust in son's favor on store fixtures as to which father executed bill of sale to person who took over business, and deposited in a bank the amount of the father's indebtedness to the son.

5. TRUSTS — FOLLOWING TRUST FUND — PRESUMPTION — BURDEN ON CESTUI.—In following a trust fund, a court of equity so far as possible will aid the *cestui* by indulging every reasonable presumption in his favor, but the *cestui* in the end must locate the trust fund in the specific property he seeks to take out of the general assets of the insolvent estate.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Judgment reversed.

STATEMENT OF FACTS BY THE COURT.

This is an action brought by Charles Korrick, as assignee for the benefit of creditors, to recover the sum of $470.80, the amount of an alleged unlawful preference paid by the defendant J. W. Robinson and Irl R. Robinson, alleged copartners, doing business under the firm name of J. W. Robinson & Son, which said payment was made to the defendant J. W. Robinson, guardian of the estate of Irl R. Robinson, a minor, in contemplation of an assignment for the benefit of creditors.

To plaintiff's complaint, defendants filed an answer, denying the existence of a partnership and the unlawfulness of the preference, and affirmatively pleaded that the money paid to the guardian of the estate, of the trust fund, was wrongfully invested in the business of the said guardian.

The case was tried before the court, without a jury. The judgment, based upon written findings of fact and conclusions of law, was rendered in favor of the said defendants. After the denial of a motion for a new trial, the plaintiff now appeals from said judgment.

The material evidence, briefly stated, is as follows:

Defendant J. W. Robinson established a mercantile business in the town of Glendale, Maricopa county, his capital consisting of one hundred and twenty-five dollars of his own and seven hundred dollars borrowed of a relative. From the outset the business was conducted under the name of J. W. Robinson & Son. At that time, Irl R. Robinson was of the age of about eight years. He furnished no part of the capital, nor was he interested in the profits of the business. However, there appears to have been no profits of the business, above family expenses. The lease of the store, in which the business was conducted, was taken in the name of J. W. Robinson and Irl R. Robinson. Irl R. Robinson worked in the store, in the mornings and evenings. Sometimes he signed checks; did much of the bookkeeping, and issued financial statements of the business and sent out letters to creditors of the business. In 1914, Irl R. Robinson became possessed of $306.66, the proceeds of his share of the life insurance of his deceased mother. In 1915, J. W. Robinson, as guardian of

his son, filed a petition in the superior court of Maricopa county for authority to use said funds in the said mercantile business.    Accompanying this petition was a letter signed by Irl R. Robinson, requesting the court to grant his guardian the privilege of using the money in the said business of J. W. Robinson & Son.    The court entered an order to the effect that J. W. Robinson, guardian, be allowed the privilege of using the money of his ward in the mercantile business at Glendale, Arizona.    All the testimony appearing upon the actual use of the said funds in the said mercantile business was given by J. W. Robinson.    He was unable to state anything more than that the money went into the business.    He said: "I used the money in the business."    No entry of money was made on the books of the concern.    From time to time, however, the guardian, J. W. Robinson, made reports to the superior court of Maricopa county, in which he charged himself, as guardian, with the said sum of money, together with interest at the rate of 10 per cent per annum.    The business of the mercantile firm of J. W. Robinson & Son did not prove successful.    On July 17, 1916, J. W. Robinson and Irl R. Robinson executed and delivered a bill of sale to C. R. Robinson, covering the fixtures in the store and certain other property.    C. R. Robinson promised, in exchange, to protect his nephew, Irl R. Robinson, by replacing the money which J. W. Robinson had used in the business of J. W. Robinson & Son, and to make a deposit of such money in the Glendale State Bank to the credit of the guardian.    C. R. Robinson did make this deposit.    On August 16, 1916, J. W. Robinson made and executed a deed of assignment for the benefit of creditors to Charles Korrick, the plaintiff, covering all the property and assets then owned or belonging to the said mercantile business of J. W. Robinson & Son.    The case was dismissed as against C. R. Robinson, and, the Glendale State Bank having paid to J. W. Robinson, guardian of Irl R. Robinson, the fund of $470.80, no recovery is sought as against the said defendant bank.

Messrs. Townsend & Stockton, for Appellant.

Messrs. Alexander & Christy, for Appellees.

BAKER, J. (After Stating the Facts as Above).—The lower court found that the business of J. W. Robinson & Son

was the individual business and property of the defendant J. W. Robinson, and that no partnership existed between the said J. W. Robinson and the said Irl R. Robinson. This finding is attacked by plaintiff's assignment as wanting support in the evidence. It appears from the testimony that Irl R. Robinson never furnished any part of the capital of the said business and that he had no interest in the profits of the business. It is true that the evidence shows that he did some clerical work about the conduct of the business, such as keeping books, signing letters to creditors of the business, etc., but it is probable that this character of work was done by him as the mere agent or servant of J. W. Robinson. It is not our province to weigh the probative force and effect of the evidence; that was the exclusive province of the trial court. The only matter for review here is the question as to whether or not there is substantial evidence to support the findings and judgment. The evidence is conflicting, and the rule is that the appellate court will not disturb the findings of fact of the trial court, based upon conflicting evidence, when they are supported by any substantial testimony, and we cannot say that the finding in question is unsupported by the evidence.

We do not consider that we are called upon to declare the order of the superior court, giving the guardian the privilege to use the ward's money in the business of J. W. Robinson & Son, a nullity. Whatever may be the status of that order, valid or invalid, it ought not to be treated as divesting the funds of the ward of their trust character, and as creating the conventional relation of mere debtor and creditor between Irl R. Robinson and his guardian, J. W. Robinson. The right still remains in the ward to follow this trust fund, or its proceeds in the shape of other property, and retake what rightfully belongs to him.

It appears that J. W. Robinson gave a bill of sale of the fixtures in the store of J. W. Robinson & Son to C. R. Robinson, and that C. R. Robinson, in consideration of such bill of sale, deposited in the Glendale State Bank the sum of $470.80 to the credit of J. W. Robinson, as the guardian of Irl R. Robinson. The intention of J. W. Robinson in making this transfer was to replace the money of his ward, Irl R. Robinson, which he had used in the business of J. W. Robinson & Son. But there is no finding that the money of the

ward was used in the purchase of these fixtures. The only evidence of the disposition of the ward's money is that it was used in the business of J. W. Robinson & Son. This is not a sufficient showing to impress a trust upon the fixtures. The legal principle involved is stated in Perry on Trusts, sixth edition, page 569, as follows:

"If the bankrupt, by a breach of trust, has converted the trust estate into other property, the *cestui que trust* may follow it into the hands of the assignee so far as he can identify the particular property obtained by breach of the trust, but if the trust property has become so amalgamated with the general mass of the bankrupt estate that it cannot be traced, or identified, the *cestui que trust* must prove his claim."

The great weight of authority holds that it is not sufficient for a *cestui que trust* to prove that his money originally passed into the hands of an insolvent, and was used by him in his business. In following a trust fund, a court of equity will, so far as possible, aid the *cestui que trust,* by indulging every reasonable presumption in his favor, but with all of this advantage the *cestui que trust* must, in the end, locate the trust fund in the specific property he seeks to take out of the general assets of the insolvent trustee. *E. B. Macey, Trustee, etc., of the Bank of Sully, Iowa, Bankrupt,* v. *Herbert Roedenbeck,* 227 Fed. 346, L. R. A. 1916C, 12, and note, 142 C. C. A. 42; *Cavin* v. *Gleason,* 105 N. Y. 256, 11 N. E. 504; *Spokane County* v. *First National Bank,* 68 Fed. 979, 16 C. C. A. 81.

We are of the opinion that the judgment must be reversed, and a new trial awarded for the want of a finding that the ward's money was employed or used in the purchase of the fixtures of the store, which were transferred by J. W. Robinson to C. R. Robinson; and it is so ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.