WILLIAM J. HARPER, Plaintiff, *v.* REMINGTON ARMS COMPANY, INC., Defendant.

Supreme Court, New York County, June 25, 1935.

*Wing & Wing* [*Arthur K. Wing* and *James G. Purdy* of counsel], for the plaintiff.

*William H. Button*, for the defendant.

LAUER, J. The questions requiring consideration at this time are presented by motions to dismiss the plaintiff's complaint made at the trial of this action.

This action was instituted by the plaintiff to recover damages for personal injuries alleged to have been caused by the negligence of the defendant.

From the facts educed at the trial, it appeared that the plaintiff on November 1, 1930, while in the vicinity of Chester Heights, Penn., went hunting for rabbits. The weapon owned and used by the plaintiff was a double-barreled breech-loading shotgun manufactured by the Baltimore Arms Company and was apparently in good condition. The plaintiff chose for ammunition a box of shells given to him by a friend, Edward C. Hancock, who, in turn, had received it as a gift from an unidentified third person. No further history of the shells' devolution into the hands of the plaintiff was developed at the trial. The box of shells given to the plaintiff was unopened and contained twenty-five shotgun shells twelve gauge in size. These shells were identical in appearance and size with ordinary commercial shells, except that the words " Proof-Load " were printed on the sides, and on the pasteboard insert in the open end of the shell were the words and figures " Remington Proof 7.5 Tons Pressure." The closed end of the shells bore the words and figures " Rem.-Umc. Nitro Club No. 12." The box which contained the shells had printed on the label affixed to the top of the cover the words and figures " 12 Ga. Proof Loads loaded with Dupont Oval Powder to an average pressure of 7.5 tons. These shells must be kept in a cool place to avoid increases in pressure." The box contained no other printing, wording nor warning of any kind.

These shells were manufactured by the defendant herein in a standard or usual size and type of cartridge and were made exclusively for use in the testing of guns and were possessed of a greater explosive force than ordinary commercial shells. The plaintiff herein, innocent of the meaning of the printing on the shells and box, and without any other notice of the extraordinary explosive force of these shells, loaded his gun with them. Upon the discharge of the first one of these shells, the gun barrel of the plaintiff's gun was blown out by the force of the shell and blew off three fingers and otherwise injured the plaintiff's left hand.

It is the plaintiff's contention that the defendant in manufacturing these shells knowingly fabricated an exceedingly dangerous article and neglected to indicate such danger in any manner so that an ordinary person, such as the plaintiff, would be put on

notice of the shell's unusual explosive force. The plaintiff claims that by reason thereof the defendant is liable to the plaintiff for the injuries sustained by him.

The defendant's proof tended to show that these shells were made solely for arms testing purposes and sold only to arms manufacturers or dealers in shells for use in testing only. The defendant urges, therefore, that it is not liable to the plaintiff, to whom the defendant claims it owed no duty of care.

At the termination of the plaintiff's case, the defendant moved for a dismissal of the complaint on the ground that as a matter of law no liability on its part had been established. Decision was reserved on the motion, which was renewed and decision again reserved at the conclusion of the trial. Thereafter, the case was submitted to the jury, which returned a verdict against the defendant in the sum of $12,000. It is the determination of the motions upon which decision was reserved which is now before the court.

The problem precisely before me for solution is: Resolving all reasonable inferences from the testimony in favor of the plaintiff, can it be said that legal liability rests upon the defendant for the injuries sustained by the plaintiff?

The plaintiff is protected in the law against an intentional invasion of his bodily security by the defendant. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339.) There is, however, no proof in this case of any intentional invasion. Neither is there proof that the shells were imperfect, negligently manufactured, nor that they were not suitable for the purposes for which they were intended, viz., testing purposes. The defendant cannot be held tortiously liable for the act of commission in merely manufacturing these shells. No liability can be imposed upon the defendant unless a causal relation between the act and the harmful result is evidenced. The plaintiff has failed in proving a causal relation between the act of commission on the part of the defendant and his own injuries.

We come to a consideration, then, whether or not there was an *un*intentional invasion of the plaintiff's bodily security.

No act is wrongful unless the probability of injury to some determinate person or class of persons raises the duty as to those persons to refrain from such act. No action can be brought until the probability of injury has culminated in damage actually sustained in consequence of the act. This is the accepted view of the courts of this State. In *Palsgraf* v. *Long Island R. R. Co.* (*supra*) Judge CARDOZO, writing for our Court of Appeals (at p. 342) said: " ' In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have

averted or avoided the injury.' [Citing cases.] * * * 'The ideas of negligence and duty are strictly correlative' (Bowen, L. J., in *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, 694)."

If the position in which the defendant is situated in regard to the plaintiff raised a duty of care, if the probability of the injuries to the plaintiff had demanded the exercise of a certain measure of care, then the defendant, if his default has caused the plaintiff's injury, must answer for the loss sustained as a legal consequence. (See Bohlen, Studies in the Law of Torts, p. 7.) Where the act is the failure to perform or the omission of a legal duty, causation is established when the doing of the act would have prevented the result. (Beale, The Proximate Consequences of an Act, 33 Harvard Law Review, 633, 637.)

The existence of the duty and the care required to satisfy that duty are to be determined by the reasonable anticipation of the normal man. To quote from the opinion of Judge Cardozo in *Palsgraf* v. *Long Island R. R. Co.* (*supra,* at p. 343): " the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." And again (at p. 344): " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension (Seavey, Negligence, Subjective or Objective, 41 H. L. Rev. 6; *Boronkay* v. *Robinson & Carpenter*, 247 N. Y. 365)." It has been held that " one who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended." (*Palsgraf* v. *Long Island R. R. Co.*, *supra*, at p. 345.) Until it is determined whether a duty to the plaintiff by the defendant existed, liability for the defendant's act whether it be an act of commission or omission cannot be fixed.

The defendant in manufacturing these shells created an active force, which, being of an intrinsically dangerous nature, created an active risk. Having created an active force or risk, it was incumbent upon the defendant to see that this active force or risk came to rest in a position of apparent safety and the defendant was committed at that point to a duty of care to all those in the orbit of danger from the active force or risk created by it. The orbit of danger extended to protect only those who might reasonably have been anticipated by the normal prudent man to have been within that orbit. To all these persons the defendant owed a duty of due care. (*G. C. P. Fire Relief Assn.* v. *Sonneborn Sons*, 263 N. Y. 463; *Smith* v. *Peerless Glass Co.*, 259 id. 292; *Palsgraf*

v. *Long Island R. R. Co., supra; MacPherson* v. *Buick Motor Company,* 217 N. Y. 382; *Statler* v. *Ray Mfg. Co.,* 195 id. 478; *Thomas* v. *Winchester,* 6 id. 397.) The intrinsically dangerous nature of the shells required that notice be given by the defendant to all those who reasonably could have been anticipated to use the shells in their ordinary and expected manner of their unusual explosive force if the defendant was to comply with the necessary measure of due care required of it (*Thomas* v. *Winchester, supra; G. C. P. Fire Relief Assn.* v. *Sonneborn Sons, supra*) or circumstances must have existed which would have made the giving of such warning unnecessary (*Rosebrock* v. *General Electric Co.,* 236 N. Y. 227). In the case at bar the defendant in manufacturing these shells for particular persons and purposes owed a duty of due care to all such persons it could reasonably expect to use the shells or come in contact with them, but to no others. This viewpoint has been adopted by the American Law Institute in the Restatement of the Law of Torts (§ 388):

" One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

" (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

" (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

" (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

In the instant case the defendant was duty bound to see that the class for whom these shells was intended, or into whose hands they might reasonably pass, had knowledge of their dangerous character. To those persons the defendant owed the duty of giving notice and warning and an omission to give it would have been negligence. The defendant could have been relieved from this duty of giving notice if knowledge of the dangerous character of these shells was had by the vendees. (*Rosebrock* v. *General Electric Co., supra; Sagler* v. *Kellogg Steamship Corporation,* 155 Misc. 217.)

The use of the words " Proof-Load " and " Remington Proof 7.5 Tons Pressure " on the shells and the printing on the label affixed to the top of the cover of the box in the case at bar would unquestionably be sufficient notice to arms manufacturers and dealers in shells for arms manufacturers of the danger and character of the

shells. Undoubtedly to such class of persons nothing further need have been done by the defendant. To them sufficient notice was given and the active force or risk created by the defendant having come to rest in a position of apparent safety, the court will follow it no longer.

The plaintiff herein was not within the orbit of danger. The plaintiff failed to show that he was a person whom the defendant might reasonably have anticipated would use these shells. Neither has the plaintiff shown that the shells were put to a use which the defendant had reason to expect they would be put. The law is well settled that when a vendee at the time of delivery knows, by reason of the custom of the trade or otherwise, of the dangerous nature of an article purchased, the vendor is relieved from liability for injury to third persons. (*Rosebrock* v. *General Electric Co.*, *supra*.) The defendant did not contemplate nor expect a resale of the shells even by dealers in shells to any one except arms manufacturers who were familiar with this type of shell. The defendant did not contemplate and had no reason to contemplate the use of them for anything other than for testing purposes. In selling these shells exclusively to arms manufacturers or dealers in shells, the defendant's liability ceased at the time of yielding the control of these shells to the vendee, provided the vendee was put on or had notice of their dangerous character. (*Sagler* v. *Kellogg Steamship Corporation*, *supra*.) The plaintiff was not a person to whom the defendant could contemplate these shells would pass, and the defendant owed no duty to any one other than those whom it expected rightfully and properly to use these shells.

Since the Court of Appeals of this State has well stated the rule that " in every instance before negligence can be predicated of a given act, *back of the act must be sought and found a duty to the individual complaining*, the observance of which would have averted or avoided the injury " (*Palsgraf* v. *Long Island R. R. Co.*, *supra*) and the plaintiff having failed to prove that a duty reasonably existed between the defendant and the plaintiff in the instant case, the defendant's motion to dismiss the complaint must be granted.

Submit order.