487 P.2d 12

TUCSON INDUSTRIES, INCORPORATED, an Arizona corporation et al., Appellants,

v.

Helen SCHWARTZ and Jack Schwartz, her husband, Appellees.

No. 1 CA–CIV 1238.

Court of Appeals of Arizona, Division 1, Department B.

July 19, 1971.

Rehearing Denied Dec. 23, 1971.

Review Granted Jan. 18, 1972.

**168**

——————◆——————

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Richard J. Woods, Phoenix, for Tucson Industries, Ann Chamberlin and William George Bolon.

Snell & Wilmer by Arthur Greenfield, Phoenix, for Entz-White Lumber & Supply, Wilhold Glues, Inc., and Walter N. Boysen Co. of Southern Cal.

Langerman, Begam & Lewis, P. A. by Robert G. Begam, Phoenix, for appellees.

JACOBSON, Presiding Judge.

A unique set of facts requires this court to determine the adequacy of a warning placed on a can of contact cement.

Plaintiffs-appellees, Helen Schwartz and her husband, Jack Schwartz, brought an action against the defendants-appellants for injuries suffered by Mrs. Schwartz to her eyes allegedly as a result of coming into contact with fumes from a product known as Wilhold Contax Cement. The matter was tried to a jury which returned a verdict in favor of Mrs. Schwartz in the sum of $75,000.00 and against all the defendants. There have been two separate appeals by the defendants from the judgment entered on the jury's verdict and the denial of post-trial motions.

Plaintiffs utilized two separate theories in seeking to impose liability upon the various defendants. For the purpose of this opinion, the defendants have been divided into two groups, depending upon the separate theories of liability.

Therefore, this opinion shall refer to the defendants-appellants, Wilhold Glues, Inc., Walter N. Boysen Co. of Southern California and Entz-White Lumber and Supply, Inc., as the "manufacturing-selling defendants", or as "Wilhold", and defendants-appellants, Tucson Industries, Inc., Ann Chamberlin and William George Bolon as the "contracting defendants".

There are certain central facts which will provide the setting of plaintiff's injuries and which are germane to the liability of both groups of defendants.

In April, 1964, plaintiff, Helen Schwartz, was employed as a telephone sales solicitor by Frontier Carpet Company which had offices in the northern portion of a building located on Camelback Road in Phoenix, Arizona. Mrs. Schwartz performed her work in that building in a room approximately 10' x 10' x 10' in size. The front or southern portion of this same building was leased by defendant Tucson Industries, Inc., as a wig shop, known as Wig World. Defendant Ann Chamberlin was employed as manager of Wig World by Tucson Industries, Inc., and she employed defendant William George Bolon to do certain remodeling work in the wig shop. This remodeling work, which began in March, 1964, required that certain countertops and shadow boxes in the wig shop

be covered with Formica. In one of the try-on rooms, where a portion of the Formica work was being performed, was an air-conditioning return duct which returned air to the central air conditioning unit which circulated cool air to the wig shop and Frontier Carpet Company, and the 10′ x 10′ x 10′ room where plaintiff was employed.

The Formica cover was being fastened to the various countertops and shadow boxes by an adhesive known as Wilhold Contax Cement. This cement was purchased at retail from the defendant Entz-White Lumber and Supply Company. The retail outlet had purchased the product from the distributor, Walter N. Boysen Co. of Southern California who in turn had purchased it from the manufacturer, Wilhold Glues, Inc.

Around the 1st of April, 1964, Mrs. Schwartz became aware of various odors which she identified as paint fumes emitting from the wig shop as the result of the remodeling work. On the 13th and 14th of April, Mrs. Schwartz felt "choked up" from the fumes. On April 15, 1964, Mr. Bolon was working in the kitchen area of the wig shop where he attached two countertops using Wilhold Contax Cement. On the same date, Mrs. Schwartz became aware of a "new" smell coming into her office. On the 15th, Mrs. Schwartz started coughing and her eyes were watering. That evening she complained of feeling lightheaded and groggy. On the following day, the 16th, Mrs. Schwartz returned to work, still feeling groggy and lightheaded. On this latter day Mr. Bolon was working in the try-on room which contained the return-air duct for the air conditioning system. His work, commencing between 11:30 and 12 noon of that day, consisted of attaching Formica to four shadow boxes. Each shadow box had ten panels to be covered with cement, a total of twenty surfaces to be covered with cement for each box. The coated surfaces were left uncovered for approximately fifteen minutes. At approximately 12:30, Mrs. Chamberlin turned on the air conditioning unit. Ap-

proximately one hour later there was a sudden saturation of fumes in the small office occupied by Mrs. Schwartz. These fumes were so intense that Mrs. Schwartz and a co-employee were sent home.

The next day Mrs. Schwartz was examined by an ophthalmologist who diagnosed the condition of her eyes as chemical keratitis, an inflammation of the cornea of the eye caused by chemical exposure. The medical evidence was sufficient to allow a jury to determine that the resulting glaucoma, surgery, and cataracts suffered by Mrs. Schwartz were the result of her exposure to fumes in the Frontier Carpet Office.

Wilhold Contax Cement contains chemicals known as toluol, butanone and hexane. This product, on its label, contained the following warning in large letters:

"DANGER: Be sure all pilot flames are out as fumes travel on floor. Do not smoke. Do not take internally. EXTREMELY FLAMMABLE. Contains Butanone, Toluol and Hexane. Use with adequate ventilation. Keep container closed. VAPORS HARMFUL. TOXIC. Keep out of reach of children. Avoid prolonged or repeated breathing or contact with skin."

In addition, on the top of the can of the Contax Cement, the following warning appeared:

"DANGER, extremely flammable, read the instructions, be sure to provide adequate ventilation and safety first."

At the close of all the evidence the court removed from the jury's consideration the question of Mrs. Schwartz's contributory negligence or assumption of risk. The matter went to the jury on the questions of whether the contractor-defendants were negligent in using the Contax Cement, whether the manufacturing-selling defendants were negligent in failing to adequately warn of the dangers inherent in the use of the Wilhold product, and whether these same defendants were strictly liable for defective labeling of the product.

The liability of the two groups of defendants shall be discussed separately.

## MANUFACTURING-SELLING DEFENDANTS' LIABILITY

In addition to the facts already stated, evidence was produced by the manufacturing-selling defendants that they had never heard of their product causing eye irritation; that there was no known case of eye damage caused by Wilhold Contax Cement and that Mr. Bolon, who was in closest proximity to the fumes, suffered no ill effects nor did Mrs. Schwartz's co-worker. On the other hand the Merck Index (a compilation of various chemical compounds commonly used by industry which shows toxicity) indicates that Butanone "may be irritating to the eyes."

Further evidence was produced which showed that Wilhold's label complied with both federal and California statutes on labeling of dangerous products.

While the question of liability of the manufacturing defendants went to the jury both on a question of strict tort liability and common law negligence, plaintiffs in their briefs before this court contend there was sufficient evidence for the jury to find that defendants negligently violated their common law duty to plaintiff and therefore were liable a fortiori to plaintiffs on a theory of strict liability.[1]

This common law concept of liability based upon a duty to warn has been expressed by the Restatement (Second) of Torts, § 388 (1965) as follows:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier could expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know, that the chattel is or likely to be dangerous for the use for which it is supplied; and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Within this conceptual arena of liability, Wilhold and its entourage contend that the trial court should have granted their motion for directed verdicts based upon two grounds:

(1) That Wilhold could not have reasonably foreseen either plaintiff as a victim of its product or the effect of the product upon plaintiff and therefore it is not liable, and

(2) In the event plaintiff was foreseeable both as a victim and as to the type of harm created, then its label was adequate and no duty it owed to Mrs. Schwartz was breached.

Wilhold's first argument on foreseeability is based upon the well-recognized qualification to the general rule concerning a duty to warn of dangers unknown to the consumer lurking within the product supplied, that is, that the manufacturer is not charged with a duty to warn of possible danger inherent within his product where the risk is rare and the injury results from some unusual use or some personal idiosyncrasy of the consumer. Merrill v. Beaute Vues Corp., 235 F.2d 893 (10th Cir. 1956). In other words, the boundaries of the de-

---

1. In this regard the court is hard pressed to find that when the "defect" alleged to be present under 402A, Restatement 2nd Torts, is an inadequate warning or direction for use that plaintiff is not required to prove ordinary negligence, that is, that the seller has knowledge or by the exercise of the foresight and skill of a reasonable man should have knowledge that the product has some potential danger. See, Comment j, § 402A Restatement 2nd Torts; and Basko v. Sterling Drug, Inc., 416 F.2d 417 (2nd Cir., 1969).

fendant's duty to warn are drawn by the type of harm the defendant could reasonably foresee that his product would cause. *See,* Tucker v. Collar, 79 Ariz. 141, 285 P. 2d 178 (1955).

 In particular Wilhold points to the evidence that during the some twenty years that Wilhold Contax Cement has been manufactured in its present form, there has been no reported case of eye damage or irritation resulting from its use and therefore it had no knowledge, nor by the exercise of reasonable care could it have acquired knowledge of this propensity of its product. From this Wilhold concludes that it could not be liable for failure to warn. However, the fact that a product has been used by a large number of people over a considerable period of time without a particular type of injury occurring does not in and of itself preclude a finding of foreseeability of injury and resulting negligence on the part of the manufacturer in failing to take necessary precaution. Martin v. Bengue, Inc., 25 N.J. 359, 136 A.2d 626 (1957). This becomes clear when we consider that a manufacturer in the position of Wilhold is treated as having the skill of an expert insofar as its product is concerned and is charged with having within a reasonable time that knowledge which scientific information and discoveries have uncovered concerning the nature, quality and propensity of its particular product. La Plant v. E. I. Du Pont De Nemours & Co., 346 S.W.2d 231 (Mo.App. 1961).

[3] There was evidence presented which indicated that one of the authoritative works in the field of toxic industrial chemicals warned that Butanone, a component of Wilhold Contax Cement, may be irritating to the eyes. With this evidence, we are of the opinion that the trial court properly submitted to the jury, under an instruction which Wilhold does not dispute, the question of whether Wilhold could rea-

sonably have foreseen the type of harm created and thereby establish the threshold legal duty of Wilhold in this case. Paul v. Holcomb, 8 Ariz.App. 22, 442 P.2d 559 (1968).

Wilhold's second contention concerning the adequacy of its warning is primarily an argument on proximate cause and foreseeability as an element of proximate cause.[2] It is proper at this point to put into perspective Wilhold's liability to the plaintiff in terms of proximate cause.

 In a failure to warn or inadequacy of warning case, as in all other negligence cases, plaintiff must trace his injury to some conduct or lack of conduct on the part of defendant. Wilson v. City of Tucson, 8 Ariz.App. 398, 446 P.2d 504 (1968); Toole v. Richardson-Merrell, Inc., 251 Cal. App.2d 689, 60 Cal.Rptr. 398 (1967). In applying this causal connection test in those cases where the alleged conduct of the defendant consists of an omission or failure to adequately perform an act, legal "causation" is established when the doing of an act or the adequacy of the performance would have prevented the injury or loss. Harper v. Remington Arms Co., 156 Misc. 53, 280 N.Y.S. 862 (1935) aff'd 248 App.Div. 713, 290 N.Y.S. 130 (1936); Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967).

It therefore becomes the task of the court to determine whether the label utilized by Wilhold in this case would have prevented the injury had different or more specific language been used, keeping in mind that the plaintiff here would not have seen the label in any event.

 Viewed from this perspective, we have little difficulty in holding that Wilhold's duty to warn of the irritating quality of its product to human eyes was not a proximate cause of plaintiff's injuries. This is for the obvious reason that a warning of this nature would not have been seen by a non-consumer victim in the posi-

---

2. *See,* W. Prosser, Handbook of the Law of Torts § 50 (3rd Ed. 1964), for a discussion of the "foreseeability of the risk of harm created" as compared to a test of "proximate cause" in ascertaining limits of defendant's liability.

tion of Mrs. Schwartz. Nor would such a warning, in our opinion, cause the actual user to take any different precautions than he took in this case to protect himself and others in the vicinity. The label itself indicated that prolonged or repeated breathing should be avoided. We deem it reasonable to assume that if a user takes precaution not to breathe or allow others in his vicinity to breathe the fumes from Wilhold's product, the protection afforded the nose would likewise be afforded the eyes. Insofar as concerns a person in plaintiff's position, the warning to the consumer to avoid prolonged or repeated breathing gave as much protection as a warning that Wilhold's Contax Cement "may be irritating to the eyes," and therefore could not be the legal "causation" of Mrs. Schwartz's injuries.

· ■■ Wilhold's lack of a duty to warn of the irritating quality of its product to eyes does not however negate the existence of another duty to this plaintiff on the part of the manufacturing-selling defendants. The manufacturer does not only have a duty to warn the actual user of its product, it has the duty to give such a warning as would adequately warn the user that those who might reasonably be expected to be in the vicinity of the user might also be exposed to a risk or hazard. Haberly v. Reardon Co., 319 S.W.2d 859 (Mo.1958); Gall v. Union Ice Co., 108 Cal.App.2d 303, 239 P. 2d 48 (1951). To determine both the adequacy of the warning and those who might reasonably be expected to be in the vicinity, the manufacturer must also anticipate the environment in which his product is normally used. Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4th Cir., 1962).

■■ In this case, we believe a jury could find that Wilhold, whose product is manufactured in Southern California, could reasonably anticipate that its product would be used indoors, in the presence of persons other than the user, and that air conditioning systems might be present which would collect and cool the fumes from its product. In this environment Wilhold's direction concerning the dissipation of fumes from its product was to "use with adequate ventilation". We believe it would not be unreasonable to assume that such a direction would justify a reasonably prudent person in using Wilhold Contax Cement where air conditioning would "ventilate" the room. Therefore, whether a specific warning should have appeared on the label which admonished the user to avoid use of the product where a closed air circulating system was utilized was a proper question to be determined by a jury on the issue of proximate cause—that is, would plaintiff's injuries have been avoided had such a warning been given. Nor is plaintiff, in our opinion, such a remote victim as to fall without the ambit of defendant's duty, considering the environment in which the product could reasonably have been foreseen to have been used and the knowledge that defendant should have possessed concerning the toxicity of its product to human eyes.

We therefore hold that the trial court properly submitted to the jury the question of Wilhold's liability based upon its common law duty to warn of the toxic effect of its product and whether or not under the rules of strict liability its label was "defective".

## THE CONTRACTING DEFENDANT'S LIABILITY

■■ The liability of the contracting defendants must rest upon some alleged conduct of defendant Bolon, the actual worker and/or Mrs. Chamberlin, the manager of Wig World. The only conduct on the part of Mrs. Chamberlin which is alleged to have been negligent was the turning on of the air conditioning unit while Mr. Bolon was using the Wilhold product. Without belaboring the point, we hold on the state of the record including the absence of any showing that Mrs. Chamberlin had any knowledge of the toxic effect of Wilhold Contax Cement, that such conduct, as a matter of law, was not negligence.

The conduct alleged to be negligence on the part of Mr. Bolon deals with his failure to keep the lid on the Wilhold Contax Cement when not in use in conformity with the instructions, failing to ascertain whether other persons in the building were being affected by the fumes and failing to ascertain where the return air duct of the air conditioning led to. Of these alleged negligent acts and omissions the only one which in our opinion might, and we repeat might, give rise to any actionable negligence on his part was his failure to keep the cement covered when not in use, contrary to the directions of the manufacturer. From this a jury might possibly conclude that the fumes from the open can combined with those from the drying surfaces of the Formica and counters and contributed to Mrs. Schwartz's injuries.

■ The contracting defendants raise, among other alleged errors, the action of the trial court in taking from the jury's consideration the issue of contributory negligence and assumption of risk. As to both of these defenses we are of the opinion that the trial court incorrectly removed them from the consideration of the jury. There was evidence that while Mrs. Schwartz may not have had knowledge that the fumes would cause cataracts on her eyes it was apparent she had knowledge that something was irritating her eyes and continued to expose them to this environment. This is the classical case for the imposition of the defense of assumption of risk. Smith v. Goodman, 6 Ariz.App. 168, 430 P.2d 922 (1967). Contributory negligence arises from the failure of the plaintiff to exercise due care which contributes to her injuries. Womack v. Preach, 64 Ariz. 61, 165 P.2d 657 (1946). In this sense, it can arise from the opportunity to appreciate the peril in a given situation but

fail to use reasonable care in avoiding that peril. *See* Hosford v. Clark, 359 S.W.2d 424 (Mo.App.1962). In this case the testimony showed that plaintiff was aware two days prior to her being exposed to the blast of fumes on the 16th of April that the actions of the contracting defendant were causing her severe discomfort, in coughing, being "choked up" and watering eyes. Under this state of the evidence, the jury could have properly concluded that Mrs. Schwartz failed to exercise the due care of a reasonable person in failing to ascertain the source of her discomfort and to remove herself from further exposure. The jury could have further found that this failure resulted in or contributed to her injuries and she was thus guilty of contributory negligence. The court's action in taking these evidence-supported defenses from the contracting defendants resulted in reversible error as to them.

■ This failure to submit the question of contributory negligence of the plaintiff as to the contracting defendants does not inure to the benefit of the manufacturing-selling defendants. These latter defendants did not urge the defense of contributory negligence before the trial court, and they have not urged as error the taking from the jury the consideration of this defense on appeal.

The judgment of the trial court as to the defendants, Wilhold Glues, Walter N. Boysen Co. of Southern California, and Entz-White Lumber and Supply, Inc., is affirmed. The judgment of the trial court as to defendants Tucson Industries, Inc., Ann Chamberlin and William George Bolon, is reversed and as to these defendants the matter is remanded to the trial court for a new trial.

HAIRE and EUBANK, JJ., concur.